[268] \*MARY ANN TAYLOR, Respondent, v. LOUIS S. HARGOUS, Appellant.

HOMESTEAD, NOTICE OF.—Occupancy by the family is presumptive evidence of the appropriation of a place as a homestead, and is consequently notice to all the world.

ABANDONMENT, INSUFFICIENT EVIDENCE OF.—The removal of husband and wife from a homestead thus selected, after and in consequence of a sale and conveyance by the husband, in which the wife did not join, furnishes no evidence of an abandonment of the homestead by her, but seems to be the very case against which the statute intended to provide.

TITLE TO HOMESTEAD NOT ESSENTIAL.—As soon as a place acquires the character of a homestead, it is immaterial how the title to the property originated, whether it was the separate property of husband, or wife, or the common property of both. It becomes a sort of joint tenancy, with the right of survivorship, as between husband and wife, and this estate cannot be altered or destroyed, except by the concurrence of both, in the manner provided by law, unless it be in favor of an innocent purchaser without notice.

RECOVERY OF HOMESTEAD.—In the case of the successive occupancy of several places as residences, the recovery of any one of them by the wife, as a homestead, would bar her recovery of any other as such.

NOTE.—Homestead, joint estate with right of survivorship, approved in *Poole* v. *Gerrard*, 6 Cal. 73. Qualified in *Revalk* v. *Kraemer*, 8 Cal. 73. Cited in *Estate of Buchanan*, Id. 509; *Estate of Tompkins*, 12 Cal. 125. Disapproved in *Gee* v. *Moore*, 14 Cal. 477; *McQuade* v. *Whaley*, 31 Cal. 530. See *Pease* v. *Barbiers*, 10 Cal. 440; *Bowman* v. *Norton*, 16 Cal. 213; *Brennan* v. *Wallace*, 25 Cal. 114. Homestead Law, construction of—Commented on in *Holden* v. *Pinney*, 6 Cal. 235. Removal of husband not an abandonment, in *Dorsey* v. *McFarland*, 7 Cal. 345; *Revalk* v. *Kraemer*, 8 Cal. 71; *Moss* v. *Warner*, 10 Cal. 297. Abandonment a question of fact, cited in *Brennan* v. *Wallace*, 25 Cal. 114. On what property may be established, in *Gimmy* v. *Doane*, 22 Cal. 638. Occupancy essential, in *Beecher* v. *Baldy*, 7 Mich. 504. See 29 Ark. 292; 31 Ark. 150.

APPEAL from the Superior Court of the City, of San Francisco.

This was an action of ejectment brought by Mary Ann Taylor, widow of James Taylor, deceased, on the 14th of July, 1853, to recover a lot of ground in the City of San Francisco, near the corner of Pacific and Sansome streets, on the ground that at the time, and previous to its conveyance to the defendant Hargous, by her husband, on the 7th day of April, 1852, it was, and had been the homestead of the family, and that she did not unite in the said conveyance, as required by law.

The facts of the case distinctly appear in the special verdict rendered by the jury, in reply to interrogatories submitted by plaintiff and defendant.

Plaintiff's interrogatories:

1st. Was the plaintiff Mary Ann Taylor, the wife of James Taylor, now deceased, on the 7th day of April, 1852, at the time of the alleged sale of the premises described in the complaint to the defendant, and was she lawfully married to him, and when?

*Answer. She was his wife, and she was married [269] to him in 1845.

2d. Was the property in question acquired during marriage, by the joint earnings of the said Taylor and the said plaintiff, his wife?

Ans. It was.

3d. Were the premises described in the complaint, occupied as a residence by the said Taylor and his wife (said plaintiff), on the 7th day of April, 1852, at the time of the alleged sale and conveyance thereof, by the said Taylor to the said Hargous, and did the said plaintiff reside thereon at the time of the said alleged sale?

Ans. The premises described were occupied as a residence by them at that time.

4th. How long did the said Taylor and the said plaintiff occupy the said premises as their residence?

Ans  From October, 1849, to about April 21st, 1852.

5th.  Had the said Taylor and his wife, the said plaintiff, any other residence than the premises described in the complaint, on the said 7th day of April, A. D. 1852?

Ans.  They had none.

6th.  At what time did the defendant Hargous, complete his building upon said lot?

Ans.  In the month of November, 1852.

7th.  Was Mary Ann Taylor, the plaintiff, present at the execution and delivery of the deed by James Taylor, to the defendant, Hargous?

Ans.  She was not,

Defendant's interrogatories:

1st.  Did the plaintiff and the said James Taylor, in the month of April, 1852, and after the sale of April 7th, 1852, by the said James Taylor to the defendant, voluntarily leave the house and lot described in the complaint, and did they, within a few days thereafter, rent a lot of ground near the Presidio, and purchase a house on said lot of ground? And did they, the plaintiff and the said James Taylor, live in said house, and on said lot of ground, from the date of [270] said renting and pur- *chase, till the month of October, 1852?  And did said James Taylor die on the last day aforesaid?

Answer.  The plaintiff and said James Taylor left the house in April, 1852, and there is no evidence to prove that the plaintiff did, or did not, leave voluntarily.  They rented a lot near the Presidio, purchased a house on the lot, and lived thereon up to the time of the death of James Taylor, October 9th, 1852.

2d.  Was the plaintiff, on and before the 7th day of April, 1852, informed of the intention of the said James Taylor to sell the house and ground described in the complaint, and did she approve the same, consent thereto, and join with the said James Taylor in offering the said property for sale to the defendant?

Ans.  The plaintiff was informed before that time of the

intention to sell, and there is no evidence that she approved or disapproved of the sale.

3d.  Was the plaintiff, on and before the 7th day of April, 1852, informed of the intention of the defendant to improve the premises described in the complaint, by erecting a costly building thereon?

Ans.  The plaintiff was aware of the intention of the defendant to improve the premises.

4th.  Did she in any way warn the defendant of her claim, whilst the said building was being constructed?

Ans.  She did not.

5th.  Were the premises described in the complaint mortgaged by the said James Taylor to the defendant, through his agent, Louis Burgiere, for the sum of $1,000, on the 17th day of April, 1851?  Was said mortgage, and part of the interest thereon, outstanding and unsatisfied on the 7th day of April, 1852?

Ans.  It was so mortgaged, and outstanding on the 7th day of April, 1852.

6th.  On said 7th day of April, 1852, did the said James Taylor, with the approval and connivance of the plaintiff, propose to the defendant through his said agent, to sell to him, the defendant, the said premises mentioned in the complaint, and to * take in part payment thereof  [271] the said mortgage, debt and interest?

Ans.  The said James Taylor, with the knowledge of the plaintiff, proposed to sell to the agent of the defendant, the said premises, and to take the said mortgage, debt and interest, in part payment.

7th.  On the said 7th day of April, 1852, or at any time before, did the said James Taylor, or either of them, set apart and select the premises described in the complaint, for a homestead?

Ans.  There is no evidence that the premises were selected or set apart.

On the facts contained in this special verdict, the Court, on the 23d day of January, 1854, rendered judgment for the plaintiff, and ordered and adjudged the deed of conveyance

from James Taylor to the defendant Hargous, to be cancelled, as null and void.

From this judgment of the Court the defendant appealed.

*Saunders & Hepburn*, for Appellant.

1. The deed, at most, was only null as to the wife; it was good as to the husband, and passed his interest in the property to the purchaser, making him a tenant in common of an undivided half.

2. The evidence shows as strong a case for a second homestead as for the first; and if, during several years, husband and wife buy several homesteads, live on them a time, and then sell, the wife, if she does not lose her claim to one, by acquiring and living in another, may sue for them all.

3. The wife knew the defendant's intention to improve. Having given no notice of her claim, during the whole progress of the improvement, she is estopped by her own fraud from asserting title to the premises. (1 Story's Eq. Jur. § 385.)

4. The homestead was not set apart as required by the statute. Judgment, therefore, should not have been given for the plaintiff.

[272]      *\*Lorenzo Sawyer*, for Respondent.

1. This case involves the construction to be given to the Homestead Act. As to its policy, see Constitution, Laws of 1850, p. 34, § 15; Laws of 1851, p. 296; Assembly Jour. pp. 1444, 1584; Senate Jour. p. 752. Laws must be construed to advance the remedy. (1 Kent's Com. pp. 464, 465, and note *a*.) For definitions of "home," "homestead," see Webster's Dic.; Burrill's Law Dic. It is the dwelling-house, and its occupancy as a home, which makes the homestead, not its selection. Selection is only necessary when it forms part of a greater whole. There was no necessity for selection in this case.

2. Married women, who are able to contract and bind themselves only in prescribed forms, cannot be affected by

their acts performed in any other mode, nor can these be imputed to them as fraud. (7 Ohio, 195; 3 Ib. 155; 6 Wend. 1; 3 Mason, 347; 8 Cow. 283; 4 How. 241; 7 Blackf. 410; 16 Johns. 114; 20 Ib. 303; 17 Wend. 540; 1 Hill, 121; 2 Ib. 240.) The wife not having joined in the conveyance, it is null and void. (Laws 1851, p. 296, § 2.)

3. To constitute fraud, the party must be deceived by concealment or misrepresentation of facts, of which he has no knowledge. (1 Story's Eq. Jur. § 386, 391.) Nothing of that kind in this case. The change of residence, after the sale, proves nothing; the wife was bound to accompany her husband. The fact that a valid mortgage on the premises, was paid by the sale, cannot affect the rights of the wife. (4 Johns. 41; Practice Act, § 260.)

Mr. J. HEYDENFELDT delivered the opinion of the Court. Mr. Ch. J. MURRAY concurred.

In *Cook* v. *McChristian (ante* p. 23), we decided that the Homestead Law required no specific act to indicate the selection of a homestead, and that the occupancy of the family was presumptive evidence of the appropriation of the place as a homestead, and was consequently notice to all the world.

The main difference between this case and that of *Cook* v. *McChristian* consists in the fact, that here the husband and * wife remove from the premises, after a [273] sale by the husband in which the wife did not join, and it is argued by the appellant that this was evidence of an abandonment of the homestead, and the acquisition of a new one.

It seems to me, on the contrary, to be the very case against which the statute intends to provide. If the husband can sell at pleasure, and remove to another place, without the consent or approbation of the wife, then the design of the statute to protect her against the improvidence, misfortunes or misconduct of the husband, would be totally nugatory.

As soon as a place, by the occupancy in good faith, of

the family, acquires the nature of a homestead, the nature of the estate becomes changed, without reference to the manner in which the title to the property originated, whether it was the separate estate of either husband or wife, or the common property of both. It is turned into a sort of joint tenancy, with the right of survivorship, at least as between husband and wife, and this estate cannot be altered or destroyed, except by the concurrence of both, in the manner provided by law.

The conveyance by the husband alone, is declared by the statute to be void, and this rule cannot be subverted, unless it be in favor of an innocent purchaser, without notice.

It is argued for the appellant, that if during several years husband and wife buy several homesteads, live in them for a time, and then the husband sells, the wife, after the death of the husband, may sue for and recover them all. Although it is not called for by any of the facts in this case, yet I have no hesitation in saying, in answer to the argument, that no such consequence could follow; because we have said that occupancy is only presumptive evidence of homestead, and therefore, when the wife has recovered one homestead, this recovery would completely rebut the presumption which occupancy might raise, in reference to any other for which she might bring suit.

The other matters, argued by the appellant, are not made sufficiently prominent by the evidence to entitle them to a separate consideration.

Judgment affirmed.