# 114    SUPREME COURT—JANUARY TERM, 1859.

## IN THE MATTER OF THE ESTATE OF TOMPKINS, DECEASED.

Upon the death of a married man, the whole of the common property is assets of the deceased, to be administered upon by his personal representatives.

The Legislature intended that the whole common property should be subject to the payment of the debts of the deceased.

The homestead does not constitute any portion of such assets.

The homestead estate is a sort of joint tenancy, with the right of survivorship as between husband and wife, and cannot be destroyed except by the concurrence of both in the manner prescribed by law.

APPEAL from the Probate Court of the City and County of San Francisco.

The following are the facts upon which this appeal is based, as they appear in the opinion of the Court :

The administratrix, who is the widow of the deceased, presented her final account for settlement to the Probate Court. In this account she charged herself only with one moiety of the common property, omitting to account for the other part of the common property or the homestead, or its rents and profits.

The Probate Court approved the account as rendered, except as to the omission to charge the administratrix with the whole of the common property, as well as the homestead, and ordered that a new account be filed charging the administratrix with the whole of the property of intestate, including the homestead. From this order an appeal is taken.

The questions presented are : *First.* Whether the whole of the common property is assets of the deceased husband to be administered by his personal representative ; *Second.* Whether the homestead constitutes a portion of such assets.

*R. R. Provines* for Administratrix and Appellant.

The following points are raised :

I. Whether the estate of the widow in the common property is assets of the estate of the deceased husband, to be administered by his personal representatives ? and,

In the matter of the Estate of Tompkins.

II. Whether the *homestead* is assets to be so administered ?

FIRST, THEN :   Is the estate of the widow in the common property, assets of the estate of her deceased husband to be taken and administered by his personal representatives ?

The Constitution of this State, Article XI, sec. 14, declares what shall constitute the *separate* property of the wife, and provides that laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to *that held in common with her husband.*   And the Legislature, in pursuance of this provision, by the Act of April 17th, 1850, " defining the rights and duties of husband and wife," section 2, has declared what property of husband and wife shall be *common property ;* and by section 11 of the same Act, provision is made for the disposition of the common property in case of the dissolution of the community by the death of either party, and it is declared that " Upon the dissolution of the community, by the death of either husband or wife, *one-half of the common property shall go to the survivor,* and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased." Now, had there been a colon or semicolon after the word " survivor " in this sentence, there never could have been any doubt as to the intention and meaning of the Legislature, nor, consequently, as to the proper construction to be placed upon it.   It would then have been perfectly clear, that the Legislature intended to charge that portion of the common property going " to the descendants of the deceased husband and wife," and that only, with " the debts of the deceased party ;" and, we think, that the punctuation of this sentence, as it is found in the Statute Book—adopted, as it may have been, by the printer—is not sufficient of itself to render that construction improper, or to cast a doubt upon the meaning of the Legislature.   Indeed, it is not only clearly susceptible of the construction above mentioned, but such would seem to be the only construction which can reasonably and fairly be placed upon it.

Now let us suppose, for a moment, that it is the *wife* who dies— indebted on contracts made by her before marriage—leaving no separate estate, and that her debts so contracted exceed the value of the whole common property,—is the whole common property in that case

to be applied to the payment of the debts of the wife, thus contracted, without regard to the rights of the husband, who has mainly contributed to its acquisition, or to the rights of his creditors? Is such the meaning and intention of this statute? It cannot be. The Legislature cannot be supposed to have intended such injustice. It is absurd. And why, then, should the rule be different when the case is reversed, and the *husband* dies? Should not the law be more careful to protect the widow, and to provide support and maintenance for her, than for the surviving husband? And is it not much more consistent with reason, and with the rules of property in analogous cases, that that portion of the property which *descends* to the heirs of the deceased, should alone be chargeable with the debts of the deceased?

The descendant *inherits from the deceased*, and therefore takes subject to equitable liens and incumbrances created by the deceased. But here the survivor, the widow, *does not take from the deceased* in any sense. She only has that which before was hers, only that now she has it separate, and divested of all contingencies arising from the power of the husband over it while living. Her interest in the common property vests in her before the husband's death, and does not in any sense *descend* to her upon his death. The question is not, therefore, whether the property of the deceased party should be charged with that party's debts, but the question here is, whether the property of *another person* should be charged therewith, merely because that prior to the death of the former the latter held that property "*in common*" with him. As to the common property, the husband and wife are mere *tenants in common*, without any other qualification than this, that during the husband's life the wife's POWER over the property is suspended, but her *estate or interest* in it is perfect and complete all the time. The Constitution speaks of "*property held in common with her husband*," not in partnership, but *in common*, and the statute declares it "*common property*."

The statute declares what shall constitute that "property of the wife held in common with her husband," of which the Constitution speaks, and gives to the husband the entire management and control of it whilst the relation of husband and wife subsists. It then provides, (Wood's Digest, p. 488, secs. 11 and 12) that where that relation is

In the matter of the Estate of Tompkins.

dissolved, " *the common* property shall be *equally divided between the parties,*" if both be living ; and if one be dead, the survivor is to take his or her half, " and the other half is to go to the descendants of the deceased, subject to the payment of the *debts of the deceased.*"   That such is the meaning and intention of the Legislature is perfectly evi-dent when the 11th and 12th sections are considered together.   The 12th section, as it stood before the amendment of 1857, provided that " upon the dissolution of the marriage by decree of any Court of competent jurisdiction, the common property should be equally divided between the parties."   Nothing was said about the wife's part being chargeable with the husband's debts, or with any part or proportion of them ; but the property was to be equally divided or sold, and the proceeds equally divided, leaving creditors, should there be any, to their remedy against the party indebted to them ; and the *proviso* inserted by way of amendment, by the Act of 1857, was not intended as any protection to creditors, or to make any provision for them, but simply as a sort of penalty to be imposed upon the guilty party, as a protection of each, against the commission of the acts there mentioned by the other.   There can be no doubt but that the Legislature intended to make the husband and wife simply *tenants in common* of the common property, *as respects the estate,* but as respects the power of disposition, during the continuance of the marriage, to prefer the husband.   By the 10th section of the Act, the common law estate of the husband, as tenant by courtesy, upon the death of the wife, and the dower of the widow, upon the death of the husband, are forever taken away ; and no provision whatever is made for the widow, if by the 11th section she is not to have one-half the common property.

Fortunately, we are not wholly without a guide, in the form of judicial decision, in the investigation of this subject.   We have, at least, one great leading case which throws a flood of light upon the whole subject.   The case of Beard *v.* Knox, 5 Cal. 252, is directly in point. By this decision we have clear judicial instruction given to these 10th and 11th sections of this Act.

It is declared that the husband and wife are jointly seized of the common property, and that one-half interest therein remains over to the surviving wife upon the death of the husband.

It is not said that the interest of the surviving wife is subject to the payment of the deceased husband's debts, but the very reverse is held ; for the estate was still unsettled, and there was no separate property belonging to the deceased, out of which the debt could be paid : all the property was common property, and still the widow was held entitled to recover the one-half in gross.   And it is also held in that case, that the interest of the wife in the common property *" is a present, vested and certain interest, which becomes* absolute at the *death of the husband,"* and that it is subject to one contingency only, viz., *" the husband's disposal during their joint lives."*

It is furthermore declared that this provision of the law is " a liberal provision "—that it is a " humane and beneficent law," intended for the benefit of the wife, etc.

Now, it is very clear that it is no provision at all for the wife, if it is to be consumed in the payment of the deceased husband's debts contracted both before and after marriage ; for the law nowhere makes any distinction between these two classes of debts.   It is perfectly clear, that the intention of this humane and beneficent law *would* be defeated by adopting such a rule of construction.   But the Court in that case further held, that the statute has substituted this half interest in the common property *in lieu of dower* which it has expressly taken away.   And that this was the intention of the Legislature, and is the fair and legitimate conclusion to be drawn from these two sections, (10 and 11) cannot admit of any question.   How does the case then stand ?   The question is reduced to this : Can the widow's dower be subjected to the payment of the deceased husband's debts ?   Who will undertake to maintain the affirmative of this proposition !   Of all rights, and of all estates known to the common law, the most sacred and inviolable was that of the widow to her dower.   It could not be defeated by *any* act of the husband, whether in the nature of an alienation, or a charge without the assent of the wife freely and duly given. And hers was the only estate upon which, when derived from the King's debtor, the King could not distrain for his debt.   It was also exempt from tolls and taxes.   And it is said there are three things favored in law—life, liberty and dower ; that dower is a legal, an equitable, and a moral right, favored by the law, and next to life and liberty

held sacred.   4 Kent's Com. 50 ; Black. Com., book 2d, p. 138 ; Co. Lit., book 1, ch. 5, sec. 36 ; 1 Hil. on Real Prop. 127.

In Beard *v.* Knox, it is held in that case that the husband cannot dispose of more than one-half (his own) of the common property by devise, because " such a conveyance can only operate after his death ; upon the very happening of which the law determines the estate, and the wife becomes seized of one-half of the property." This reason would apply just as well to a *charge* upon the common property, created by will, as to a conveyance of it ; and just as clearly will apply to the creation of any lien upon it which can only attach after the husband's death ; for the creditor at large has no *lien* upon the property during the life of the husband, and the lien of the administrator, for the payment of debts, cannot attach until *after the death*, as was said in Beckett *v.* Selover, (8 Cal.) and, of course, can only attach upon the property of the deceased, and not that of the widow, for upon the very happening of the death her estate becomes absolute, as we have before seen.

The statute has nowhere provided that the deceased husband's *separate property* shall first be applied to the payment of his debts before resort is had to the common property for that purpose.

The creditor has only the right which the law gives him, and that is, to have his demand satisfied *out of the estate of the deceased,* if there is sufficient for that purpose ; and even then he must take the rank assigned him by the statute, and wait his turn to be paid : and if the whole fund is exhausted before it reaches him, he is without remedy, either against the administrators or the creditors previously paid ; for the statute prefers certain classes of creditors of deceased persons, but not with respect to the community, or the community property. Wood's Digest, p. 415, art. 2334.

But it will be urged again, that the " *community debts* " are to be paid out of the " community property." But the obvious reply is, the law does not say so.   The law says, that the debts of the deceased are to be paid out of *his* property, and goes no further.   And then again, there is no such thing as a " *community debt* " in this State.   There is no such term known to our law.   There is no such word in the Stat-

ute Book.   There is none such in the Constitution, or in any decision of this Court.   There is no such idea to be found in any part of our law ; none such can be fastened upon it.   It is clearly excluded by the terms of the statute, " subject to the payment of *the debts of the deceased*."   See Laws of Texas on the same subject.

Creditors at large have no rights *as against the property*.   They must acquire some lien upon it, either statutory, or by contract, or by legal relation, before the happening of the contingency which divests the debtor of the estate, otherwise their recourse against the estate so divested is thereby lost to them forever.

Now this act is an innovation upon the common law—the prevailing law of the land at the time of its passage.   It is therefore to be construed strictly, and no loose notions of right and property are to be lugged in with it under the name of incidents or consequences, which are not clearly provided for by the Act itself.

Respondent's counsel has cited the cases of Beckett *v.* Selover, 7 Cal. 238 ; Harwood *v.* Marye, 8 Cal. 580, and Gray *v.* Gray, April T. 1858, for the purpose, as is supposed, of showing that the lien and possession of the administrator for the payment of debts attaches upon the whole common property.   But those cases affirm no such doctrine ; no such point is raised in either of them.   They go no further than to hold that the administrator is entitled to the possession of, and has a lien upon, the whole of the *estate of the deceased* for the payment of debts.

II.  Is the " homestead " assets of the intestate to be administered by his personal representatives ?

By the Act of April 21st, 1851, " to exempt the homestead, etc., from forced sale," etc., (Wood's Dig., p. 483) and the judicial construction which that Act has received, a peculiar estate has been created in the husband and wife in the premises, answering to the description of homestead.   And it matters not whether the property was originally common property of husband and wife, or the separate property of the former ; so soon as it acquired the character of " homestead " by the residence of the family upon it, the *nature of the estate became changed*, and it was turned into a sort of joint tenancy ; (Taylor *v.*

Hargous, 4 Cal. R. 273) so that it was no longer common property, but a *joint estate*.   In the language of the case last cited, "it is turned into a *sort* of joint tenancy, as between husband and wife."   Now, what *sort* of a joint tenancy was this ?   It was a sort of joint tenancy known to the common law; differing from it, it is true, in the manner of its creation, but in that only, and not in its nature, incidents or consequences.   This peculiar sort of joint tenancy was created at common law, by the grant of an estate to husband and wife ; and the consequence of it was, that neither the husband or the wife could dispose of *any part* of the estate without the assent of the other, so that neither could by his or her own act destroy the joint tenancy.   And in this particular—its indestructibility by the act of either party—it differed from the most usual sort of joint tenancy, which would be destroyed by the act of either party, that is, by the alienation of that party's interest, so that the parties themselves could not possibly prevent or avoid the grand incident or consequence—*the right of survivorship*— except by a joint conveyance.   Black. Com., book 12, ch. 2 ; Jackson *v.* Stevens, 16 J. R. 115 ; Doe *ex dem.* Depuyster *v.* Howland, 8 Con. 283 ; Jackson *v.* McConnell, 19 Wend. 175 ; Faul *v.* Campbell, 7 Yerg. 319.

In some of these authorities it is said, that the husband and wife in such a case are not tenants in common, nor yet joint tenants, strictly speaking, since each is seized of the entirety, and holds *per tout et not per my*.   Whatever *name* may be deemed most suitable for this peculiar estate, one thing is certain—the grand incident of joint tenancy— the right of survivorship attaches to it, so that upon the death of the husband, the wife succeeds to the whole estate by the right of survivorship.   Taylor *v.* Hargous, 4 Cal. 268 ; Estate of Buchanan, deceased, 8 Cal., p. 509 ; Revalk *v.* Kraemer, 8 Cal. 72.

In all of these cases, the doctrine of the right of survivorship between husband and wife, as to the homestead, is affirmed.   It follows, therefore, that upon the instant of intestate's decease the appellant, being the survivor, took the whole estate ; and such being the conclusion, the homestead never was, in any sense, assets of the intestate's estates, however it may be held with respect to the common property.   See Lies *v.* De Diblar, Jan. T. 1859.

*W. W. Theobalds* for Respondents.

Does Mary M. Tompkins take one-half of deceased's estate in her own right, immediately upon his death, as his wife, or only after final settlement and accounting for the *whole* thereof, as administratrix ? and does she take the homestead, also, as *her own property*, immediately after his death ? or only jointly *with* and *in trust for* the minor heirs, and therefore *accountable to them* (though not to creditors) for the disposal, use and profits thereof ?

Respondents hold her bound to account in both cases ; in the first case, for the *whole estate* directly for the benefit of creditors, and remotely to the heirs ; and in the second case, directly and only to the heirs, and for the following reasons :

1. Upon the death of the husband, one-half the common property rests immediately in the wife, and one-half in their children ; but in each case " subject to the payment of the debts of the deceased," and to the possession of the administrator for that purpose ; until which payment by the administrator, and a final settlement in the Probate Court, neither the wife nor the children can know the amount and subject matter of their respective shares.

The general rule of partnership settlements holds good here—the creditors must be paid before either partner can know how much or what is theirs, or claim their individual shares. Section 11 of Act concerning Husband and Wife, and secs. 194 and 216 of Act concerning Estates of Deceased Persons, declare it the duty of the administratrix to account for the *whole* of the *property* and *profits* of the estate. Beard *v.* Knox, 5 Cal., page 252, cited by appellant, does not impugn this view. Dower at common law was only a *life estate* of the wife in *one-third* of her husband's *lands*.

In California, by our liberal laws the *joint* seizin and *ownership* of *husband and wife* during coverture of *all* the *common* property, becomes the absolute seizin and *ownership* of the *wife* in her *sole right,* upon his death, of *one-half* thereof, but subject to the lien and prior possession of the administratrix, to pay the *joint* debts and settle the estate. Beckett *v.* Selover, 7 Cal. R., p. 238–9 ; Gray *v.* Gray *et al.*, April Term, 1858 ; Harwood *v.* Mary *et al.*, 8 Cal., p. 580.

2. So far as creditors are concerned, there is no necessity for the administratrix to charge herself with the homestead and other property exempt from execution.   It is exempted by law, and *set apart* by the Probate Court for the *wife and children*, expressly to free it from the claim of creditors.   But *here* the question is *between* the *administratrix* and the *minor heirs*.   As against them, her account rendered for final settlement of the estate should show the existing facts.   She should not be allowed therein to claim as hers what belongs to them, but show what is hers in her own right, and what she holds only in trust for them, *i. e.*, what is theirs, and thus prepare the way for a just and legal partition and distribution of all the estate.

Section 10 of the Homestead Act says : " The homestead and other property " of the deceased husband, " exempt from forced sale, shall be set apart *for the benefit* of the surviving *wife and his own legitimate children.*"   Sec. 124 of the Act concerning Estates of Deceased Persons, designates what is the exempt property to be " set apart. for the use of the widow or minor children," or for both ; and not " subject to administration," so far as creditors are concerned.   The homestead (not to exceed five thousand dollars in value) is included in the enumeration ; and sec. 125 of the same Act shows to whom this exempt property belongs.

In the case of Taylor *v.* Hargous, 4 Cal., p. 268, the Court says : " The homestead is a *sort* of joint tenancy, with the right of survivorship, *at least*, as between husband and wife."   True, it is so as *between them ;* but the very end and object of this joint tenancy in them, and of this survivorship in one of them, is, the *protection* of the property embraced by it *against all others for the benefit of the family and children, not against them* or *either of them.*

In Revalk *v.* Kraemer, 8 Cal. R., p. 72—74, the Court says : " The leading idea of the Constitution and statute is, the *protection of the family.*"   The protection is given to the *capacity*, " as *head of a family.*"   The homestead is directed to be set apart *for her and the children.*   Could she *alone* sell or incumber it ?   If it is hers, in her own right, of course she can both sell and incumber it.   But if she owns only an undivided interest, and holds the whole jointly with and for others, until division of interest—meanwhile, however, controlling,

managing and taking the benefits of the whole—then clearly she is responsible and accountable for the whole, proceeds and rents included; and this should all be made to appear in her final account, in order that after all the debts and expenses of the estate and of administration are paid, and the rights and claims turned into assets in possession, the heirs may all obtain their respective shares in all the remaining property, real and personal, of whatever class or kind, homestead and exempt property as well as common property.

TERRY, C. J., delivered the opinion of the Court—BALDWIN, J., concurring.

The questions presented are, 1st. Whether the whole of the common property is assets of the deceased husband to be administered by his personal representative ?

2d. Whether the homestead constitutes a portion of such assets ?

By our statute, the entire common property is subject to the absolute disposition and control of the husband during coverture, and is liable to be executed for his debts.    It is also provided, that "upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor and the other half to the descendants of the deceased husband and wife, subject to the payment of the debts of the deceased."

Appellant contends that by a proper construction of this section only that portion of the common property which descends to the heirs of deceased is subject to the payment of the debts of the intestate.

This position is not tenable.    During the lifetime of the parties the whole of the common property is subject to the debts of the husband, and the Legislature will not be presumed to have intended that the death of the party should deprive his creditors of recourse against one-half of the common property, unless such a construction is required by the obvious meaning of the language employed.

We are satisfied, however, that no such intention can be legitimately gathered from the language of the section ; on the contrary, it sufficiently appears that the Legislature intended that the whole common property should be subjected to the payment of the debts of deceased. Whatever ambiguity there may be in the language of that part of the

section quoted in appellant's brief, is explained, and the meaning of the section made clear by the remaining portion, which he seems to have overlooked : " If there be no descendants of the deceased husband or wife, the *whole* shall go to the survivor *subject* to *such payment.*"

On the second point, we are satisfied that the homestead is not assets in the hands of the administrator.

Under the decisions of this Court, the homestead estate is a sort of joint tenancy, with the right of survivorship as between husband and wife, and cannot be destroyed except by the concurrence of both in the manner prescribed by law.    Taylor *v.* Hargous, 4 Cal. 268.

Upon the death of the head of the family it is made the duty of the Probate Court to set apart the homestead, for the benefit of the wife and legitimate children of the deceased.    After this is done the Court has no further control over it.

Whether the appellant succeeded to the homestead in her own right, or in trust for the children of deceased, is a question which does not arise in this proceeding, inasmuch as the jurisdiction of the Probate Court does not extend to such questions.

The judgment, so far as it requires appellant to charge herself with the homestead, and its rents and profits, is reversed, and in other respects it is affirmed.