[S. F. No. 7633. Department Two.—August 10, 1916.]

In the Matter of the Estate of JOHN M. KEITH, Deceased.

WILL—LETTER ATTACHED TO OLOGRAPHIC WILL—ABSENCE OF TESTA-
MENTARY INTENT.—An unsigned letter of the testator addressed to the person nominated as the executor of his olographic will, and found inclosed in the envelope containing such will, to which it was attached by a clamp, is construed and held not to manifest any testamentary intent, and not to be admissible to probate as part of such will.

APPEAL from an order of the Superior Court of the City and County of San Francisco admitting a certain writing to probate as part of the will of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

John L. McNab, Gavin McNab, Nat. Schmulowitz, and R. P. Henshall, for Appellants.

Sydney Schlesinger, and John F. Bowie, for Respondent.

HENSHAW, J.—Deceased left an olographic will which was admitted to probate. It was duly executed and made disposition of a large estate. It named J. J. Mack of San Francisco as executor without bonds. Subsequently J. J. Mack offered for probate an unsigned writing of the testator's, in form as follows:

"March 3rd, 1913.

"Mr. J. J. Mack:

"I have made a will and have named you as exicutor without Bonds and giving you (10) ten year to settle up my estate and longer if you find it necessary.

"I have left Some three hundred thousand dollars to my relatives, to be divided up and given to each one as directed in my will. I have only Six Brothers and Sisters to give anything to and I think fifty thousand is all any of them will be able to handle to advantag.

"As I am giving One hundred and fifty thousand to the State University to erect a memorial to the memory of Mrs. Keith I have abandoned any idea to giving to an old Womans Home or any other home for anyone. As this will cut out a great amount of the work contemplated by me I direct or think from the present outlook that you should be paid for your Services as Administrator fifty ($50,000) thousand dollars. If I should have anything left after making all payments and bequest, I am not sure just what I care to have done with it."

This writing was offered for probate as a part of the will of the deceased which had already been admitted to probate. It was written upon two sheets of paper. The nature of its discovery, and the reason why it was not originally offered for probate as a part of the olographic will, is explained in the testimony of Mr. Mack, executor, as follows:

"That the two pages now offered for probate were found in the same envelope with the three sheets which had theretofore been admitted to probate as the last will and testament of John M. Keith; that the five sheets were held together by a metal clamp or clip; that he discarded these two sheets now offered for probate, believing the same to be merely a personal letter advising him of the wishes of the deceased; that his attorney likewise advised him that the sheets were not a part of the will but were merely an unsigned letter; that several days later he brought the matter to the attention of his counsel and that some months subsequently his attorney concluded that

under the decision of this court in the *Estate of Merryfield,* 167 Cal. 729, [141 Pac. 259], it constituted a portion of the will.'' And still further Mr. Mack testified that after the death of Keith he found in his apartments a sealed envelope bearing indorsement in the handwriting of Keith, ''My last will and testament. John M. Keith, Bakersfield, March 3, 1913, John M. Keith.'' Within the envelope were paper writings of the testator, held together by a single metal clamp or clip. The first of these in order was the unsigned letter to Mr. Mack, consisting of two pages. Next in order were three pages, each page signed by the testator, and the three constituting the olographic will as originally admitted to probate. The court admitted the unsigned letter to probate ''as a part of the will already admitted,'' and from its decree so doing this appeal is taken.

Standing alone, it is not disputed but that the two pages admitted as a part of the will of Keith were not executed with the formalities required by law. It was not signed by the testator. Nevertheless the argument was advanced and adopted by the judge in probate, that although the letter to Mr. Mack was written last, still ''in contemplation of law the entire document was a literary unit and an indivisible legal entity. . . . It was virtually a single act.''

If these two writings are to be judged from their contents, *ex visceribus suis,* no one would doubt but that the executor's first conviction that the unsigned letter addressed to him formed no part of the will and was merely a note of personal advice, was perfectly sound. It is manifest that the testator knew of the requirements governing the execution of an olographic will, and was careful to see that no doubt could be raised as to the due execution of his own will. This is shown by his care in affixing his signature to each page thereof. His failure or refusal to perform a similar act of signing the personal letter might well be viewed as a precaution, to prevent the taking place of exactly that which here has taken place—the admission of this letter to probate as a part of his will. Still further, upon the face of the letter it nowhere discloses an intent that it should be read and construed as a part of his will. Thus, there is no reference to it in the will itself, and the letter uses no language to indicate that the writer contemplated that it should be construed as part of his will. First, there is an absence of signature. Next, there is

express reference not to the making of a will, but to a will already completely made—"I have made a will." The only language which by any stretch of imagination can be said to indicate even a testamentary intent is found in that sentence where the writer says, "As this will cut out a great amount of the work contemplated by me, I direct or think, from the present outlook, that you should be paid for your services as administrator $50,000." But apparently this language is designedly guarded, to forbid the possibility of its being construed as testamentary in character. He does not direct— he directs or thinks. He does not think that the administrator should receive fifty thousand dollars, but thinks "from the present outlook" he should receive that sum. The internal evidence of the two documents then, we repeat, standing alone, is well nigh conclusive to the effect that the testator believed that he had in the three pages of writing originally admitted to probate executed a full and complete will, and that in the personal letter to his friend Mack he clearly expressed this belief; for that letter makes explicit declaration of the fact that the testator had made a will, and contains nothing bearing the inference that he assumed that his personal communication to his friend, was to be considered as a part of that will. Cases are numerous—they do not require specific reference—where courts have gone to lengths in upholding as valid written dispositions of property which those courts could clearly see were designed to be testamentary in character. But here the court in probate has reversed this canon of construction, and has forced upon the estate of the testator a writing which it has decreed to be testamentary, but which manifestly the testator himself did not design to be or think was testamentary in character. The reversal of this decree which must follow could securely be rested upon this ground alone—namely, that this writing, incomplete as a will, bears overwhelming evidence that it was not written by the deceased *animo testandi*, but to the contrary, that it was written, as the executor most naturally and properly concluded upon his first reading of it, as a letter of private information and advice to the man whom he had named as executor in his formal will. But it appears from the brief of respondent, wherein is embodied, as a part of respondent's argument, the opinion of the learned judge in probate, that direct and conclusive support for the adjudication upholding the admission

of this letter in probate as a part of the will, is found in the decision of this court in *Estate of Merryfield,* 167 Cal. 729, [141 Pac. 259]. In that case Mrs. Merryfield, an aged lady, left an olographic will. It was written on three sheets of paper of the same size and character and apparently torn from the same writing pad. On each of the three sheets was writing exclusively of the testatrix, and the writing of the three sheets formed a complete olographic will, the last sheet of the three being signed. The three sheets were folded together in sequence, and were kept in a locked drawer, where they were found. There was no contention but that the third sheet which was signed was in itself a good and complete olographic will. The contention was that the two preceding and unsigned sheets were not a part of this will. The court in probate found from the evidence that the three sheets did constitute the will of the deceased. This court declared that the evidence was sufficient to sustain the court's finding, pointing out that the sheets themselves were arranged and folded together in proper sequence (in the case at bar the letter to J. J. Mack is the first paper held by the clip) ; next that it is not likely that the testatrix would have folded these pages in order and carefully preserved them with her will if she had not intended and believed that they were a corporate part of her will; finally that the fact that the will was written upon more than one sheet of paper was immaterial, and herein it is said, "Nor is it necessary to support the finding that the several detached pieces of paper constitute one instrument, that these sheets should be fastened together by mechanical or other device." (Citing cases.) This last declaration says this and only this: That it is not necessary that several detached pieces of paper, together forming one written instrument, must necessarily be connected together by some mechanical or other device before it can be held, as a matter of fact or law, that they do constitute together a single instrument. We are at pains thus to define the full meaning of this language, since it appears from his decision, based upon this case, that the learned judge in probate construed it to mean that where papers were bound together by a mechanical device, necessarily and without regard to anything else, they did form a part of a single instrument— in this case a will.

Certain cases, principally from Pennsylvania, are relied on as affording additional support to the court's ruling. But, to

begin with, it may be said, in the language of one of them:
"In such cases as this, precedents rarely afford aid." (*Gaston's Estate*, 188 Pa. St. 374, [68 Am. St. Rep. 874, 41 Atl.
529].) Of the cases which are most relied on, one is *In re
Harrison's Estate*, 196 Pa. St. 576, [46 Atl: 888]. In that
case the testatrix had left a will. She also executed a writing
upon the face of a sealed envelope, as follows: "Six bonds for
my brother John's daughters; also, one for my nephew J.;
to be sold after my death." No question whatsoever arose
over the testamentary character of this writing, and it was
admitted to probate as a part of the will. The question which
did arise was whether the bonds spoken of in this codicil could
be sufficiently identified, and the holding was that as the
codicil was written upon an envelope containing bonds, it
was a fair inference that the codicil had reference to the bonds
within the envelope. But in that case Chief Justice Green
is at pains to point out the extraordinary length to which the
court of Pennsylvania has gone in upholding all kinds of
irregular, incomplete, and insufficient writings as constituting
wills, and proceeds to review what he calls "some of the
remarkable cases in which papers were sustained as wills."
Manifestly the determination of the Pennsylvania court in
that case has not the slightest bearing upon the question before this court. The other case is that of *Fosselman* v. *Elder*,
98 Pa. St. 159. There the testatrix left a will, and among her
papers was found a sealed envelope, indorsed in her handwriting thus: "Dear Bella, this is for you to open." Within
the envelope was a promissory note for two thousand dollars,
and a paper written and signed in the handwriting of the
testatrix as follows: "Lewistown, October 2, 1879. My wish
is for you to draw this $2000 for your use should I die
sudden. Elizabeth Fosselman." Here again no question
arose over the due execution of this writing as a codicil to
the will, nor over its admissibility to probate as a codicil.
The contention was that testamentary effect could not be
given to it because it failed to describe with sufficient certainty the legatee, and the decision of the court, which its
chief justice described as being one of its "remarkable cases,"
was that reference could be had to the language "Dear Bella,
this is for you to open," found upon the outside of the envelope, as serving to identify this Bella as the person to whom
the codicil gave the legacy. This case also, it must be appar-

ent, is equally inapplicable. In neither of the Pennsylvania cases was the question of the due execution of the paper writing as a will in controversy. Here it is the sole question in controversy. In each of the Pennsylvania cases the testatrix duly executed an instrument of testamentary character in accordance with the law of wills. In the first of the cases the question was whether the property bequeathed could be sufficiently identified. In the second, the question was whether the beneficiary had been described with sufficient certainty to enable the court to give effect to the bequest. It certainly cannot require more than this statement to establish the radical difference between those cases and this, where the very gist of the controversy is not over the meaning of a duly executed testamentary writing, but whether the writing itself is testamentary, and, if testamentary, whether it has been executed with the formalities required by law. For the reasons already given it is to our minds clear that the writing addressed to J. J. Mack was not written by the deceased *animo testandi,* nor was it executed with the formalities required to justify its admission to probate, even if it were so written.

To the end that respondent on this appeal may have the full time allowed by law after the filing of this opinion and decision in which to petition the court for a rehearing of the matter, the judgment heretofore given is set aside, and the decree appealed from is reversed on this date.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.