[Civ. No. 25993. Second Dist., Div. Four. Dec. 18, 1962.]

Estate of MARIE KELLER FALCONE, Deceased. A. V. FALCONE, Petitioner and Appellant, v. CLARK QUINN KELLER et al., Contestants and Respondents.

42

A. V. Falcone, in pro per., Falcone & Falcone and Dewey Lawes Falcone for Petitioner and Appellant.

Robert J. Grossman for Contestants and Respondents.

BURKE, P. J.—This is an appeal based upon two separate notices of appeal by the decedent's surviving husband, A. V. Falcone, from certain portions of the judgment, order and decree of final distribution. In summary, appellant asserts that respondents' petition to determine heirship did not state facts sufficient for such determination; that respondents did not prove they were pretermitted heirs or that there was any separate property for them to take; that the cash proceeds from the sale of the former residence of the parties upon which there was a recorded homestead constituted the proceeds of a homestead and vested as such in the appellant by operation of law immediately upon decedent's death and were not part of the estate.

Decedent and A. V. Falcone were married on July 23, 1941.

Each had children by prior marriages. Decedent's are Howard Keller, Rosemarie Keller Hunt and Clark Quinn Keller. The last two, both adults, were the petitioners in the proceedings to determine heirship and are the respondents on this appeal. Howard Keller died on April 18, 1951, predeceasing his mother. He left surviving him a daughter, Beverly, a minor. Howard and the minor's mother had been divorced, the final decree having been entered on December 17, 1948. The mother subsequently married a Mr. Bohlman, who adopted Beverly on September 4, 1951. Neither the minor's mother nor Mr. Bohlman are related by blood to decedent. The court adjudged that the minor was not decedent's heir and no appeal has been taken with respect to Beverly.

Decedent had been a court reporter but was not regularly employed after 1943. Thereafter she was principally a housewife but did engage in a limited practice of psychology and did some writing but with only nominal earnings. Both prior to and during their married life appellant engaged in the practice of law and also in some extraneous activities including farming, chicken ranching and as operating coowner of a small defense plant.

Decedent left a holographic will dated May 24, 1944, which read as follows: "Everything I possess, I leave to my beloved husband, A. V. Falcone." Decedent enclosed this will in an envelope together with a typewritten document. She sealed the envelope, signed her name "Marie Falcone" on it and delivered it to appellant with her oral statement to him that the same contained her holographic will leaving everything to him and further contained her wishes and suggestions to him which he might but need not follow. She had had considerable illness both before and during her marriage. At the time of the delivery of her will to her husband she was entering the hospital for surgery.

On June 3, 1944, when she returned home appellant stated to her that he had opened the envelope and read the documents. Decedent stated that he should keep them, which he did. The typewritten document consisted of two parts, the upper part containing suggestions to appellant as to her wishes regarding her three children and as to appellant's sister and daughter, named therein as Yolande and Dolores. The lower part contained a personal message to appellant.

At the hearing appellant testified that on January 5, 1947, decedent stated to him she had changed her wishes and suggestions and requested him not to make any provision for or

gifts to any of her three children for certain reasons which she stated, including that they were estranged from her. She requested appellant to bring the letter she had written to him to her. He stated he did so on the next day and that she cut off the upper part and tore it in half, stating that she revoked it. Appellant requested to keep the torn parts as well as the lower part as a memento. He stated that decedent said he could do so but not to consider her original wishes and suggestions which had been set forth in the part which she revoked. Appellant kept the envelope and its contents which were introduced in evidence.

The holographic will was admitted to probate and the appellant was appointed as administrator with will annexed. The typewritten document, although received in evidence, was determined by the court to have had ''no legal effect and is not considered by the court.''

The judgment decreed that certain cash held on deposit in decedent's name, certain stocks likewise in her name alone and an equity in a promissory note in her name representing the remainder of the sale price of a former residence of the parties were decedent's separate property and decreed two-thirds thereof to respondents as pretermitted heirs and one-third thereof to the appellant individually. It decreed that certain items of personal property and an automobile were appellant's own property and not part of the estate, and that basically all other articles of personal property were community property which the decree awarded to appellant.

The issues raised on appeal are principally: (1) Are respondents pretermitted heirs and in this connection was the court in error in determining that the typewritten document which accompanied the will had no legal effect? (2) Did the decedent leave separate property? (3) What was the status of the cash proceeds from the sale of the homestead property, which property was sold prior to decedent's death?

As was pointed out in *Estate of Torregano*, 54 Cal.2d 234, 248 [5 Cal.Rptr. 137, 352 P.2d 505], ''Since its origin as a state, California has continuously protected both spouse and children (and to some extent, grandchildren) from unintentional omission from a share in testator's estate. Such protection, unknown to the common law, has been provided by statute, commencing with the Acts of 1850, continued by various sections of the Civil Code, and today appearing in sections 70, 71, 90, 91 and 92 of the Probate Code. Thus the Legislature has indicated a continuing policy of guarding against

the omission of lineal descendants by reason of oversight, accident, mistake or unexpected change of condition.''

 The court then followed with certain rules of construction applicable to the objects and interpretation of these statutes, including among which are (p. 249) : ''There is a presumption of law that the failure to name a child or grandchild in a will was unintentional [citing cases]''; that ''Although a testator may lawfully disinherit any or all of his natural heirs if he so desires, in order to avoid the operation of the pretermission statutes, an intent to omit provision for testator's child 'must appear on the face of the will, and it must then appear from words which indicate such intent directly, or by implication equally as strong. Any other rule would lead to guesses or to inferences merely conjectural, which would be too unsubstantial to base judgment on.' (*In re Stevens,* 83 Cal. 322, 329-330 [23 P. 379, 17 Am.St.Rep. 252] [Citing cases].)''

 While the petition to determine heirship in the instant case left something to be desired as a pleading, it was sufficient to meet the requirements of section 1080 of the Probate Code. When considered in conjunction with the statement filed by appellant it was sufficient to comply with the requirements as to pleading so as to place the issues before the court. The petition did recite the relationship of petitioners to decedent, the fact that decedent omitted to make any provision for petitioners in her will although each is the natural object of her bounty and that they are entitled to and claim a share in the separate property of decedent. Appellant's objections at the time of trial to the introduction of evidence based upon insufficiency in the petition were properly overruled.

Appellant argues that the typewritten document which was written by decedent at the time she executed her holographic will should have been considered by the court as it showed clearly that the omission of any mention of her children in the will was intentional and not unintentional. It is true that pretermission can only exist through oversight; that it occurs only when there has been an omission to provide, absent an intent to omit. (*Estate of Torregano, supra,* 54 Cal.2d 234, 246.)

Appellant argues that extrinsic evidence is always admissible for the purpose of proving the circumstances under which a will was executed (*Estate of Smith,* 145 Cal. 118, 123 [78 P. 369]) and to explain any ambiguity arising on the face of a will or to resolve a latent ambiguity which does not so appear. (Prob. Code, § 105; *Estate of Kurtz,* 190 Cal. 146, 149 [210 P.

959]; *Estate of Frinchaboy,* 108 Cal.App.2d 235, 236 [238 P.2d 592].) ██ However, as pointed out in *Estate of Torregano, supra,* at page 247, ". . . the several statutes protecting presumptive heirs against unintentional omission disclose a clear legislative intent that evidence *dehors* the will should be admissible to prove a reason or cause, other than intentional, for such omission. For example, the language of Probate Code, section 90, creates a pretermission unless an affirmative intent to disinherit appears on the face of the will. The Legislature therein refrained from expressing any limitation upon evidence to prove *lack of intent.* . . . In creating such a pattern of statutes, the Legislature has only codified the ordinary rules of evidence which bar the use of 'suspect' evidence except in certain cases of necessity. ██ This is why section 90 expressly denies the proponent the right to offer extrinsic evidence to prove *intentional omission.* Such proof would be tantamount to allowing parol declaration of intent to conflict with a written statement thereof. But such reason does not exist where the offeror of the evidence desires to show *lack of intent.* Of necessity, such must be proved by circumstances other than the testator's declaration of intent."

██ In the instant case the typewritten document which accompanied the will was not offered as a part of the will. Even if offered it could not have been admitted since it did not conform with the requirements of a holographic will. Since it was not a part of the will, it may not be resorted to under section 90 of the Probate Code as an aid to the court in determining whether the failure of the testatrix to provide in her will for her children was intentional.

██ Appellant refers to a number of cases relating to the incorporation of nontestamentary documents by reference as a result of which they are made a part of a will. That this can validly be done is true even with respect to the adoption in a holographic will of a document which is not written, dated and signed in the handwriting of the testator, such as was construed by the court in *Estate of Martin,* 31 Cal.App.2d 501 [88 P.2d 234]. There, the language in the holographic will directed that real and personal property be left so as to carry out the terms of the will left by decedent's wife. This was held to be a valid incorporation by reference. In the case before us there is nothing in the holographic will indicating any intention on the part of the testatrix that the letter be considered a part of the will. Likewise, the typewritten docu-

ment does not in itself comply with the requirements for a valid testamentary document.

Probate Code section 53 prescribes that a holographic will "is one that is entirely written, dated and signed by the hand of the testator himself," and further that "No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."

Probate Code section 101 provides in part that "Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument." However, the typewritten document in the case before us cannot stand on its own feet as a testamentary document and since it was not incorporated by reference by anything said in the will itself, as was pointed out by the trial court, it may not be considered for any purpose.

In the case of *In re Keith,* 173 Cal. 276 [159 P. 705], the deceased left a holographic will which was admitted to probate. Thereafter the executor named in the will offered for probate as a part of the will an unsigned writing which the testator had addressed to him. This writing was found in the same envelope with the holographic will and was fastened to the will by metal clamp or clip. The court admitted the unsigned letter as a part of the will previously admitted to probate. In reversing the trial court the Supreme Court pointed out that nowhere upon the face of the letter was an intent disclosed that it should be read and construed as a part of the decedent's will; that there was no reference to it in the will itself; and that, as is the situation in the case before us, there was an express reference in the extraneous writing to a will already completely made. In the *Keith* case, *supra,* the language used was "I have made a will." In the case before us the language reads, "If anything happens that I don't wake up, here is a will to protect you," which language the testator followed with the statement, "I know you will follow my wishes regarding the children, and they are these :"

Clearly, in the will before us the testatrix left everything to her husband and then wrote him a letter accompanying the will in which she expressed certain wishes concerning things that she desired him to do with respect to the children. It is true that the effect of this extraneous writing indicates quite clearly that she had her children in mind when she wrote the will and therefore that her not naming them was

intentional. However, under the existing statutory law the trial court was correct in not resorting to the extraneous writing from which to arrive at this conclusion since such intention did not appear from the will itself as required under Probate Code section 90 previously alluded to.

We now pass to the consideration as to the character of the property left by decedent. Appellant asserts that there was no separate property and therefore nothing to which the pretermitted heirs are to succeed. In its judgment, however, the court decreed that certain items of property, heretofore specified, were the separate property of decedent. There were specific findings included in the findings of fact and conclusions of law pertaining to these enumerated items which support the judgment in this respect. The evidence introduced was voluminous and the court allowed broad latitude, permitting appellant to produce evidence as to the origin and source of funds which were used to acquire the various items of property. It also permitted appellant to introduce evidence as to conversations had between appellant and decedent with respect to their antenuptial, nuptial and postnuptial verbal agreements respecting the manner in which they were to own and hold their property. Appellant testified these conversations were to the effect that all of their property would be their community property, irrespective of the manner in which the title would be taken and held.

Notwithstanding these agreements, certain property was placed in the name of the decedent as her separate property. Appellant was engaged in verious commercial enterprises as well as in the practice of law and testified certain properties were held in this manner in decedent's name as a protection for her.

At the end of the hearings, however, the court concluded that the particular items heretofore specified are in fact the separate property of the decedent, having been given to her by appellant. These findings, supported by evidence of the manner of taking title, are binding upon this court. (*Nevins* v. *Nevins*, 129 Cal.App.2d 150, 154 [276 P.2d 655].)

Appellant makes mention of the fact that many of the court's findings are wholly inconsistent with the particular findings which do support the judgment. There were several petitions pending before the court and in finding some of the allegations of such petitions true or untrue certain inconsistencies do occur; for example, the finding that allegations that all of the property owned by the decedent and ap-

pellant was the community property of the parties is true. Such general findings are in direct conflict with the more specific findings that the particular items of property heretofore mentioned are in fact separate property of the decedent. Since they are in conflict, appellant argues that his motion for new trial should have been granted and that this court should remand the issues for a new trial in the superior court. In this respect it should be borne in mind that at the conclusion of the hearings the court directed appellant to prepare the findings in accordance with his memorandum of decision which the court handed down. In this memorandum of decision the court specified quite clearly which items of property it had decided were the separate property of the decedent. ■■■■ As is the rule with respect to the construction of findings an appellate court must make every intendment in favor of the judgment and erroneous conclusions of law or unsupported or erroneous findings of fact will be disregarded as being harmless error if judgments, as rendered, can be sustained on the supported and proper findings made by the trial court. (*Hay* v. *Allen,* 112 Cal.App.2d 676, 681 [247 P.2d 94] ; *Carlson* v. *Brickman,* 110 Cal.App.2d 237, 248 [242 P.2d 94].)

We turn now to the problem with respect to the status of the cash proceeds received from the sale of the homestead property. ■■■■ The nature of a recorded declared homestead is "a sort of joint tenancy, with the right of survivorship as between husband and wife, and cannot be destroyed except by the concurrence of both in the manner prescribed by law." (*Estate of Tompkins,* 12 Cal. 114, 125.)

■■■■ A homestead vests in the survivor on the death of either of the spouses only if it has not been conveyed by the owner prior to the death of the owner. ■■■■ Here, clearly, the homestead terminated upon the sale of the property, a sale which was joined in by both decedent and appellant.

The proceeds from the sale were placed in a bank account standing in the name of the decedent alone. This was done with the acquiescence of appellant. The court found that the money in the bank account was the separate property of the decedent. This finding has substantial support in the record consisting of the manner in which the funds were deposited and is binding on this court.

The homestead having been sold by the joint act of the parties, the proceeds arising from the sale are exempt "to the

owner of the homestead for a period of six months next following such sale.'' (Civ. Code, § 1265.) However, while the proceeds may have been exempt from execution, the court could, in the exercise of its discretion, refuse to set apart such exempt property to the surviving spouse under section 660 of the Probate Code. This is what the trial court did and there is no basis for adjudging such action as an abuse of its discretion.

This disposes of the principal contentions of appellant and the major issues presented. We have examined the other contentions and arguments presented but find them to be without merit. To delineate them at this point would only serve unduly to prolong this opinion.

Judgment affirmed.

Jefferson, J., and Ford, J.,* concurred.

Appellant's petition for a rehearing was denied January 8, 1963, and his petition for a hearing by the Supreme Court was denied February 13, 1963. Schauer, J., did not participate therein.

---

*Assigned by Chairman of Judicial Council.