[S. F. No. 12024. In Bank.—November 14, 1927.]

In the Matter of the Estate of JOHANN DIEDRICH SIE-
MERS, Deceased. CATHERINE RAFTERY et al.,
Appellants, v. LILLIAN KUCK et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — WILL CONTEST — JUDGMENTS—
MINUTE ORDERS — APPEAL.—On a will contest, an entry in the
minutes of the court on a certain date, recording the granting
of an application for probate of a will of a certain date and
the denial of an application to establish a lost will said to have
been made on another date, at which time the court signed and
annexed to the instrument admitted to probate and filed in the
papers of the estate a certificate of the proof and facts found,
as required by section 1317 of the Code of Civil Procedure, does
not constitute a judgment, the court at a subsequent date having
signed formal findings of fact and entered judgment in the
matter, and an attempted appeal from said first mentioned order
will be dismissed.

[2] ID.—ORDER DENYING NEW TRIAL — MOTION TO VACATE JUDGMENT
—APPEAL.—No appeal lies from an order denying a motion for a
new trial; neither does an appeal lie from an order denying
a motion to vacate a judgment, as the judgment itself is appeal-
able, and on appeal therefrom the order denying the motion to
vacate said judgment is reviewable.

[3] ID.—FINDINGS — SUFFICIENCY OF EVIDENCE.—In this will contest
it is held that the evidence was sufficient to sustain the findings
of the trial court that an instrument of a certain date offered
for probate was the last will and testament of the deceased.

[4] ID. — WILLS — REVOCATION — INCONSISTENCY BETWEEN DIFFERENT
WILLS. — Where the will of a deceased person purports to dis-
pose of all of the decedent's property, both real and personal,
although it contains no residuary clause, and the evidence shows
that after the payment of all bequests made, debts, funeral
expenses, and costs of administration, there would be little, if
anything left, the testator's intent being shown to dispose of
all of his property, the will was inconsistent with a prior will

2. See 2 Cal. Jur. 164–167, 174.
4. Revocation of will by subsequent will, notes, 37 L. R. A.
561; 51 A. L. R. 652. See, also, 26 Cal. Jur. 808; 28 R. C. L. 172,
173. Inconsistent provisions of subsequent will as revocation, note,
Ann. Cas. 1914A, 123. See, also, 26 Cal. Jur. 811; 28 R. C. L.
175.

and amounted to and was a complete revocation of said prior will.

[5] ID. — EXECUTION OF INSTRUMENT — LACK OF INTENTION TO MAKE WILL.—The proof that a friend was endeavoring to secure decedent's property and that the latter was bothered and annoyed by her actions in this respect, followed by the further proof that he executed a will in her favor which he gave to her but in a few days thereafter he executed another will, in many, if not in all, respects inconsistent with the former will, which latter will he left in his safe deposit box, sufficiently justified the trial court in believing that decedent did not intend that the first of said writings should be or remain his last will and testament.

[6] EVIDENCE—LEADING QUESTIONS—DISCRETION.—Permitting a party to ask leading questions of his own witnesses is a matter largely in the discretion of the trial court, and in the absence of an abuse of the discretion its action will not be reversed on appeal.

(1) 40 Cyc., p. 1349, n. 97.   (2) 40 Cyc., p. 1350, n. 99.   (3) 40 Cyc., p. 1297, n. 23.   (4) 40 Cyc., p. 1292, n. 85.   (5) 40 Cyc., p. 1354, n. 33.   (6) 4 C. J., p. 824, n. 67; 40 Cyc., p. 2427, n. 26.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clarence A. Henning for Appellants.

Grant & Zimdars and William P. Hubbard for Respondents.

CURTIS, J.—This appeal purports to be from two orders or judgments of the Honorable Frank H. Dunne, judge of the superior court of the city and county of San Francisco, in the matter of the estate of Johann Diedrich Siemers, deceased. One of said orders or judgments, it is claimed by appellants, is an order and judgment of said court dated January 30, 1925, admitting to probate an alleged will of said deceased of date November 1, 1922, and denying the

6. Permitting leading questions as matter within the discretion of trial court, note, 17 Ann. Cas. 840. See, also, 27 Cal. Jur. 80; 28 R. C. L. 590–592.

application of Catherine Raftery to establish a lost will as the last will and testament of said deceased, alleged to have been dated May 1, 1923. The other of said orders or judgments so appealed from is a judgment rendered on February 27, 1925, denying the probate of an alleged will of date May 1, 1923, being the alleged lost will bearing said date, and also refusing to admit to probate a writing dated October 1, 1922, as the last will of said deceased, and admitting to probate as the last will and testament of said deceased an instrument bearing date November 1, 1922, and appointing Lillian Kuck executrix of said last will of said deceased. The appeal also purports to be from an order of said court denying a motion for a new trial and from an order denying motion to vacate judgment.

[1] It is contended by appellants that the court rendered two judgments in the same proceeding in the matter of said estate instituted to establish and prove the last will and testament of said deceased, one bearing date the thirtieth day of January, 1925, and the other of date February 27, 1925. The record, however, on this appeal fails to bear out this contention of appellants. On the other hand, the record shows an entry in the minutes of said court dated January 30, 1925, as follows: "Application for probate of will dated November 1, 1922, granted. Application to establish lost will said to have been dated May 1, 1923, denied." On the same day the court signed and annexed to the instrument bearing date November 1, 1922, and filed the same in the papers of said estate, a certificate of the proof and facts found as required by section 1317 of the Code of Civil Procedure. No other or further order or judgment in said estate was made or entered by the court on said day. On the twenty-seventh day of February, 1925, however, the court signed formal findings of fact and entered judgment in the matter of the contest of the will of said deceased denying the application of Catherine Raftery to establish said alleged lost will of date May 1, 1923, and denying the probate, as the last will of said deceased, of the writing dated October 1, 1922, and admitting to probate, as the last will of said deceased, the instrument dated November 1, 1922, and appointed Lillian Kuck executrix thereof. Therefore, the only judgment rendered in said matter was that dated and entered on February 27, 1925. There being no judgment of

date January 30, 1925, in said matter the attempted appeal
therefrom is therefore dismissed. [2] No appeal lies from
an order denying a motion for a new trial. (Code Civ.
Proc., sec. 939.) Neither does an appeal lie in this case
from the order denying the motion to vacate the judgment,
as the judgment itself is appealable and on appeal there-
from the order denying the motion to vacate said judgment
is reviewable. To permit, therefore, an appeal from such
an order would be virtually allowing two appeals from the
same order. (*Estate of Baker,* 170 Cal. 578 [150 Pac. 989].)
The appeals, therefore, from the order denying the motion
for a new trial and to vacate the judgment are dismissed.
This leaves for our consideration only the appeal from the
judgment of date February 27, 1925.

Johann Diedrich Siemers died in the city and county of
San Francisco on the twenty-ninth day of December, 1923,
leaving an estate therein consisting of real and personal
property of the value of $20,000 or thereabouts. After his
death there was found in his safe deposit box in the Mission
Bank in said city a document purporting to be a will of said de-
ceased entirely written, dated, and signed by the said deceased.
By the terms of this document $2,000 was bequeathed to the
Union Trust Company of San Francisco in trust to care
for the graves of said deceased and his wife, who had prede-
ceased him; $5,000 to Stiene Kuck, a sister of said deceased;
$2,000 to Lillian Kuck, her daughter, and a number of other
bequests of $500 each to various relatives of himself and
his wife; also a like amount to the Masonic Home situated at
Decoto, California. Said bequests were preceded by a state-
ment that "I . . . hereby dispose of all my property both
real and personal upon my death as follows." The said
Lillian Kuck was named in said instrument as the executrix
thereof. On January 3, 1924, she filed said instrument in
the office of the clerk of said court, together with her peti-
tion for the probate thereof, and asked that letters testa-
mentary thereon be issued to her. Her petition was regu-
larly set for hearing and notice thereof given of the time
and place of the hearing thereof. In due time the contes-
tants, Catherine Raftery and Mary Raftery, filed their oppo-
sition to the probate of said instrument as the last will and
testament of said deceased, and in their said written opposition
they alleged that subsequent to the execution of said instru-

ment, of date November 1, 1922, said deceased, on May 1, 1923, executed a writing, which they alleged to be the last will and testament of said deceased, by which instrument he disposed of all his estate and in which the said Catherine Raftery was named as the executrix thereof. It was further alleged by said contestants that said will was entirely written by said deceased in his own handwriting, had never been revoked or destroyed by said deceased or by anyone in authority; that it was left by him at the time of his death as his last will and testament; that by the terms thereof said Catherine Raftery was bequeathed the sum of $10,000, her sister, Mary Raftery, $2,500; that the same bequests were made to the Union Trust Company of San Francisco and the Masonic Home at Decoto as were mentioned in the instrument of November 1, 1922, and that the remainder of his estate was given to his nieces and nephews residing in San Francisco and Germany. Said contestants also allege that said will was lost and had been destroyed by a person or persons other than deceased and without his consent, authority, direction, or knowledge, but was at the date of his death in full force and effect. Upon this petition, the said written opposition thereto, and the answer of said Lillian and Stiene Kuck to the said written opposition, said proceeding came on for trial before said court sitting without a jury. During the trial, which began on October 21, 1924, the proponent, Lillian Kuck, produced a writing dated October 1, 1922. This writing appears to have been written entirely by the deceased and purported to dispose of all his real and personal property. Its terms were much the same as those claimed by appellants to have been contained in the instrument of May 1, 1923, which appellants sought to establish as the lost will of said deceased. By the terms of the writing of date October 1, 1922, the said Catherine Raftery was bequeathed the sum of $10,000, her sister, Mary Raftery, $2,500, and the same bequests were made to the Union Trust Company of San Francisco and the Masonic Home at Decoto as were asserted to have been made in said alleged lost will. By its terms $2,500 was given to said Stiene Kuck, sister of said deceased, and the remainder of his estate was distributed among his nieces and nephews residing in Germany and San Francisco. The said Catherine Raftery was by said document appointed the executrix thereof. At the time said Lillian Kuck pro-

duced said document of October 1, 1922, she testified that some months after the date of the death of said deceased she and her mother, while searching through a pantry in the house which had been the home of said deceased at the time of his death and for some years prior thereto, the mother of said Lillian Kuck discovered this paper of date October 1, 1922, in a "cubby hole" in this pantry, between the house of said deceased and the adjoining house; that it was inclosed in an envelope marked "Mission Lodge, No. 169 F. A. M. Deliver this my last will to the proper authority only after my death. John D. Siemers"; that with this envelope was found a second envelope addressed to Mrs. Catherine Buckle, 440 Chenery Street, San Francisco, California (but not in the deceased's handwriting), in which second envelope were two letters, one dated Roxbury, Massachusetts, November 15, 1923, and the other dated New York City, February 14, 1922. (The evidence shows that these two letters were letters of the appellant Catherine Raftery.)

This document of date October 1, 1922, was never formally offered for probate either by Catherine Raftery or by anybody else. No question is made but that the writing dated October 1, 1922, and that dated November 1, 1922, respectively, were entirely in the handwriting of the deceased. The court found that the instrument of date November 1, 1922, was the last will and testament of said deceased; that said deceased did not leave a last will and testament or any writing purporting to be his last will and testament dated May 1, 1923, and no such instrument was lost, or destroyed by any person or persons; that no such instrument as the one alleged of date May 1, 1923, ever existed or was ever in force or effect or of any validity whatever; that Catherine Raftery for over one year prior to the death of decedent had persistently importuned the decedent to make a last will and testament in her favor; that decedent for the purpose of bringing to an end the said importuning signed the writing dated October 1, 1922, for the purpose of making it appear to said Catherine Raftery that he had complied with her request. "That the said decedent did not in fact at the time of the signing of the paper of October 1, 1922, intend that the said writing should take effect as his will, but executed the same simply for the purpose, as aforesaid, of bringing to an end the importun-

ing of the said Catherine Raftery. That after the signing of said writing he gave the same into the possession of said Catherine Raftery. That shortly thereafter he executed the will of November 1, 1922, which the court finds to be the last will and testament of said decedent, and said will of November 1st, 1922, he placed in his safe deposit box.''

[3] Appellants attack these findings on the ground of the insufficiency of the evidence to support them or any of them. We will first consider the contention of appellants that the evidence is insufficient to support the finding that the decedent did not leave a last will and testament of date May 1, 1923. This was the purported lost will which appellants sought to establish. At the time of his death and for some years prior thereto the deceased had made his home at 987 Guerrero Street, in the city of San Francisco. He was 67 years of age at the time of his death and had been a widower some ten or twelve years before he died. His sister, Stiene Kuck, and her daughter, Lillian Kuck, lived across the street from his home, and with them he was on friendly terms. He had known Catherine Raftery some seven years prior to his death. Up to about ten weeks before the death of deceased she had lived at 440 Chenery Street, in said city, where she took care of a Mr. Buckle. Just how long she had had the care of Buckle, or in what capacity she was rendering him care and attention, does not clearly appear in the record. There is evidence, however, that her name appeared on his death certificate as his wife and she often went by the name of Mrs. Buckle, although there is no claim that she was ever legally married to him. He died on October 20, 1923, and immediately thereafter she moved to the home of Siemers, where she remained up to the day before the death of Siemers. Prior to taking up her home with Siemers she was often at his house and the two were frequently in each other's society. The deceased was taken ill only a day or two before his death, which occurred on December 29, 1923. Regarding the purported will of May 1, 1923, Catherine Raftery testified that in a conversation with deceased held on May 1, 1923, he said to her: ''I am going to make a will, and leave you ten thousand dollars.'' She then testified: ''And then he wrote the will out. This was in his house after we came back from the park, because he said 'nobody took care of his brother when he was sick.'

And he said, 'Mr. Buckle has somebody to take care of him.'
'I know you will take care of me like that if I am sick.' I
was there when he wrote it out. He just sat down and
wrote it out. He said he was going to leave it in the Masonic
Temple. But he never did leave it there; because he said
he was going to write out another one, later on. He didn't
say that very day, but he said he was going to show it to
some people, and then he left it in the drawer. He took it
down to the bank and showed it to Mr. Dunn and Mr. Wood.
He said later on I will write out another one and leave you
fifteen thousand dollars. He didn't write that. . . . I read
the will of May 1, 1923, on the same day, May 1, 1923, that
he wrote it. I handed it back to him. He put it in the
drawer in his room. He put it into an envelope. He wrote
on the envelope this, 'To be distributed by the proper au-
thorities,' on the outside. He put the envelope into the
bureau drawer in the bedroom on May 1st, 1923. I saw the
will again on Tuesday, the 11th of December, 1923.
The circumstances under which I saw this particular will,
dated May 1st, 1923, were, I said, 'Dick, I had better do
housework; people are talking because I am staying here with
you.' He said, 'Oh, they will talk anyway. You don't have
to work. This is for you.' So he opened the will and
showed it to me, in his, the same room. He took it out of
the drawer and opened it up so that I could see it and said,
'this is for you, and you don't have to work.' I looked at
it and recognized it as being the same will of May 1st, 1923,
the same one. He put it in the drawer again. That was
December 11, 1923. He showed it to me again, and I didn't
open it up any more after that. Just previous to Decem-
ber 11th I was in Los Angeles for a week. Away from Mr.
Siemers. I came back to San Francisco Friday, December
7th. While in Los Angeles Mr. Siemers wrote me and said
for me to come back, that he was lonesome for me, and for
me to come back. . . . Q. Preceding the death of Mr. Sie-
mers, what was the last time that you saw in this bureau
drawer, where Mr. Siemers placed this will in the envelope
upon May 1, 1923, what was the last time you saw the
envelope in the bureau drawer preceding Mr. Siemers' death?
A. I think that very day, but I didn't pay any attention
to it at all. On the day of his death I was continuously
with Mr. Siemers. . . . ''

Nita B. O'Neill, a witness on behalf of the contestants, testified that the deceased on or about December 6, 1923, showed her a writing which he said was his will, which was dated May 1, 1923, and signed Johann Diedrich Siemers. This witness gave the names of the devisees named in said will, and, as given by her, they were practically the same as those which the contestant, Catherine Raftery, testified were in the instrument claimed by her to be the will of May 1, 1923. This witness testified that deceased called on her on said day, December 6, 1923, and requested her to write to Catherine Raftery, in Los Angeles, and ask her to come home. He showed her this writing of date May 1, 1923, and his bank-book, and said: "This is what I have done for her in case of my death." The witness took the writing which the deceased said was his will and read it over three times. This witness was shown the writing of October 1, 1922, and stated, "I recognize that handwriting as being the same handwriting on the will I saw." Her attention was called to the words "without bonds" interlined in the writing of October 1, 1922, and she said that she saw no such words interlined in the writing of May 1, 1923, which she said the deceased had shown to her and stated it to be his will. Percy A. Wood, a witness in behalf of the contestants, testified that he was an attorney at law and was assistant trust officer of the Union Trust Company; that some six or seven months prior to January 1, 1924, the deceased Siemers and Catherine Raftery came to the bank and Siemers showed him a writing which he said was his last will and testament and asked the witness whether it was a legal document. Upon being informed by Siemers that it was written, dated, and signed entirely in his own handwriting, the witness advised Siemers that in his opinion the document was legal. He did not remember the date of the writing nor the names of the beneficiaries therein. He was shown the writing of October 1, 1922, and his attention called to the interlined words "without bonds" and he said that he did not believe it was the same instrument shown to him by Siemers, nor were the words "without bonds" interlined in the writing shown to him by Siemers. Another witness testified the deceased prior to his death had told him that he had made a will in which he had left Catherine

Raftery some money and that this will was in the Mission Street bank.

As against this evidence the respondents, Lillian Kuck and her mother, Steine Kuck, each testified that they came over to the home of the deceased on the afternoon of the day just prior to his death and were with him up to the time he died; that besides a Mr. Meissner, a clerk in a nearby grocery store, the two respondents were the only persons with deceased at the time of his death, which occurred at about half-past two Saturday morning. Very soon after his death these three persons locked up the house and left together; that later on and during the same morning Lillian Kuck went over and put a bolt on the back door; that no one after the death of deceased had access to the house except the respondents, Lillian and Steine Kuck; that a day or so after his death they examined the bureau drawer in which Catherine Raftery testified the will of May 1, 1923, was left, and made a thorough examination of the whole house, but found no will in the house of date May 1, 1923, or any writing at all purporting to be a will of said deceased except the instrument dated October 1, 1922, which was not found until some months after his death; that in the bureau drawer they found a bank-book belonging to Miss Raftery, but no letters nor papers nor anything that purported to be a will. Upon this evidence the trial court found that the deceased never made a will of May 1, 1923, and that no such will ever existed. In arriving at such a conclusion the court must have rejected the evidence of Catherine Raftery and her witnesses in so far as they testified to the existence of such a will and accepted the evidence of the respondents that no such will was found after the death of the deceased. If the deceased ever made a will of date May 1, 1923, according to the testimony of Catherine Raftery, the only person who testified upon this phase of the case, it was kept in the drawer of this bureau, in the room in which he died, and was there on the day of his death. Both Lillian Kuck and her mother testified that it was not there at any time when they first examined the drawer, which was a day or so after the death of deceased. There is nothing in the evidence to lead to the belief or inference that anyone had access to said bureau drawer or had removed any paper therefrom between the time fixed by Catherine Raftery as the last occasion on

which she said she saw the will of May 1, 1923, in the bureau drawer, and the time when Lillian Kuck and Steine Kuck said they first examined said bureau drawer. Therefore, if deceased ever left such a document, it must have been in said bureau drawer at the time Lillian and Steine Kuck first examined the same after the demise of the testator, and would have been found by them on said occasion. As has already been stated they each testified that no such document was in said drawer nor was any such document found by them at any time. The trial court undoubtedly accepted their testimony in this regard. In so doing it rejected the evidence of Catherine Raftery that such a writing was left by said deceased in said drawer. The evidence of Lillian Kuck and her mother was sufficient to support the finding of the court that the deceased left no will of date May 1, 1923. The court having rejected Catherine Raftery's evidence that the deceased left a will of that date in the bureau drawer, was warranted in rejecting all of her evidence bearing upon the execution and existence of such a will and in believing and finding that no such will ever existed.

[4] Reverting now to the finding of the trial court that the document of date October 1, 1922, was not the last will and testament of said deceased and to appellants' contention that this finding is unsupported by the evidence, it will be observed that this will was executed just one month prior to the will of November 1, 1922. The latter will purports upon its face to dispose of "all my property both real and personal upon my death as follows." The testator then proceeded to make a number of specific bequests aggregating the sum of $15,500. The will, however, contains no residuary clause. There was no finding by the trial court as to the value of decedent's estate. In respondents' petition it is stated that its value does not exceed $17,400. In contestants' petition they allege that its probable value is $22,000, and in the affidavit of Lillian Kuck, designated as "Testimony of Applicant on Probate of Will," the statement is made that the estate "does not exceed the value of $26,000." The question as to its value had but scant consideration during the trial, and we find but little evidence in the record dealing with the question of its value. The will of November 1, 1922, being subsequent in time, would be a revocation of all former wills made by deceased, but only to the extent

that its provisions were inconsistent with those of former wills (Civ. Code, 1296). The bequests of $15,500 made in the will of November 1, 1922, are undoubtedly valid and are a first charge against the estate after the payment of the debts of the deceased, his funeral expenses and the cost of administration. There was no evidence as to the amount of debts left by deceased. The record is also silent as to the amount of his funeral expenses and the cost of administration of his estate. The bulk of the property left by deceased was real property, which would have to be sold in order to pay the bequests created by the will. Upon forced sale the amount this real property would bring would be problematical. It is evident from these facts that there would not be any considerable amount of the estate remaining after the payment of the amounts chargeable against it, including said bequests of $15,500. This fact taken in connection with the expression used by the deceased in his will that he hereby disposes of ''all my property both real and personal'' may well and reasonably lead to the conclusion that said testator by said will of November 1, 1922, intended to and did dispose of all his property. If such were his intention, then the said will was inconsistent with the provisions of the prior will of October 1, 1922, and therefore amounted to and was a complete revocation of said prior will.

[5] But whether there was or was not a revocation of the writing of October 1, 1922, the trial court found that the decedent did not at the time of its signing intend that said writing should take effect as his last will, but that he executed the same simply for the purpose of bringing to an end the importuning of Catherine Raftery that he make a will in her favor, and that after giving the same to said Catherine Raftery he executed the will of November 1, 1922, which was the last will of said decedent. While the evidence in support of this finding may be somewhat meager, we are not able to say that there is an entire absence of any evidence in the record to justify it. The effect of the testimony of a number of witnesses was that Catherine Raftery greatly annoyed and bothered deceased, and that he was anxious to get rid of her; that he was greatly annoyed because she was after his property. One witness, a distant relative by marriage of the deceased, testified that some time in December, 1923, about the 17th of the month, she was

with the deceased and that "he said Miss Catherine was in Los Angeles, and he hoped that she would stay there, because she tried to get him to sign all the property he had over to her, and she got mad because he wouldn't do it." The witness, Carl G. Meissner, testified that either in November or December, 1923, the deceased came to him and had him address a letter to Catherine Buckle at Los Angeles, and at that time the deceased said to him that "he wanted to get rid of this woman, who was after his money; . . . He said, 'She is just bothering me to death.'" That witness Julius Bruns testified that "Mr. Siemers told me that Mrs. Buckle or Miss Raftery was a lot of trouble to him. . . . He did not know what to do." Proof that the contestant Catherine Raftery was endeavoring to secure decedent's property and that the latter was bothered and annoyed by her actions in this respect, followed by the further proof that he executed a will in her favor, which he gave to her, but in a few days thereafter he executed another will in many, if not in all, respects inconsistent with the former will, which latter will he left in his safe deposit box, sufficiently justified the trial court in believing that decedent did not intend that the first of said writings should be or remain his last will and testament. In our opinion the finding in question was justified by the evidence.

It is conceded that the instrument of date November 1, 1922, was entirely written, dated, and signed by the testator. The court upon sufficient evidence having found that decedent did not leave a last will and testament or any writing purporting to be his last will and testament of date May 1, 1923, and that the writing of October 1, 1922, was not his last will, it of necessity follows that the will of November 1, 1922, was the last will and testament of said deceased.

Respondents make the further contention that appellants cannot be heard to object to this order denying to probate the writing of October 1, 1922, for the reason that they have failed to take any appeal from said order. While the notice of appeal makes no express mention of the writing of October 1, 1922, nor of any order of court concerning it, yet we feel that the general reference made in said notice of appeal to the order and judgment of February 27, 1925, is sufficiently comprehensive to include the order in reference to said writing of October 1, 1922.

[6]   The court permitted respondents to ask certain leading questions of their own witnesses and this action of the court is by appellants assigned as error.   This matter is largely in the discretion of the trial court, and in the absence of an abuse of this discretion its action will not be reversed on appeal.   There is no showing that the appellants were prejudicially affected by these rulings of the court.

The judgment is affirmed.

Seawell, J., Richards, J., Waste, C. J., Langdon, J., Preston, J., and Shenk, J., concurred.

Rehearing denied.