[Civ. No. 12179. Second Appellate District, Division Two.—March 16, 1939.]

In the Matter of the Estate of PATRICK S. MARTIN, Deceased. WILLIAM MARTIN et al., Appellants, v. EDITH McMULLAN, Executrix, etc., et al., Respondents.

Faries & McDowell and Samuel Schwartz for Appellants.

Samuel J. Crawford and Catlin & Catlin for Respondents.

CRAIL, P. J.—This is an appeal from a decree admitting to probate the will of Patrick S. Martin, deceased, and incorporating therein as a part thereof exhibit 2, hereinafter set out.

There is no contention that the will was not properly executed. The contention is that, "Patrick S. Martin in his will refers to one will executed by May Martin, whereas she executed two separate and distinct instruments, each of which differs from the other in many respects", and that "parol evidence is inadmissible to identify an extrinsic instrument or its terms, not clearly identified in the will itself".

Patrick S. Martin died on January 29, 1938, and left the following will:

> "11776 Chenault Str
> Brentwood Hts L A
> November 9th 35

"In case of my death I want my Brother in Law George C. McMullan & Sister in Law his wife Edith McMullan to be executors of the Estate I leave. Real & personal & to carry out the terms of the will left by my wife May Martin.
> "Signed
> "PATRICK S. MARTIN"

Respondents filed said will for probate and filed therewith the following instruments (exhibit 1):

"19th July 1935                            11776 Chenault St
                                                   Brentwood Hgts
                                                   Los Angeles Cal

"Last Will & Testament:

"I want all money in bank sent to my sister in Australia Mrs. George Peele Davis. All properties in my name & those in partnership with my Husband to be left to her after death

of my Husband. He must not sell any of them without giving up my share. He is to enjoy income from these investments until his death. I do not think him capable of making his living so leave him provided for after my death, as I did in life. I want my Dear Sister Edith & her Husband George to be Executors of my estate. If my Husband marries again all property belonging to me to be taken from him & given at once to My Sister Mrs Geo Peele Davis. I do not propose to keep another woman on my earnings. I trust to Patrick S. Martin honestly to fulfill my wishes in this matter.

"MAY MARTIN

"Witness
   "MARION B. BATES"

(Exhibit 2)

"19th July, 1935

"11776 Chenault St
Brentwood Hgts
Los Angeles Cal

"My Will & Testament
   "I bequeath money in bank $1150.51 to my sister Mrs. George Peele Davis *at once.* All property in my own name & property in partnership with P. S. Martin my half of same at the death of said P. S. Martin to be sold & proceeds to be given to sister Mrs. Geo Peel Davis & $500 dollars each to my brother Robert Pollock's two daughters Edith & Peggy. The Revenue from these properties to go to P. S. Martin during his lifetime. If he marries again all my property & my half in partnership with him to be sold at once & given to above mentioned heirs. I have worked to keep him & myself ever since I met him and even in death will be doing the same. My Sister Mrs. George McMullen and her Husband I appoint executors of my estate and I hope will have no trouble with P. S. Martin. He entered this Country with me as a Canadian without one dollar of his own. He has since become an American citizen & has not given me one dollars or contributed to my support, so there is no such thing as Community property with us. But I think he will be satisfied as long as he is provided for as long as he lives. In case my sister should die (Mrs. G. P. Davis) her share before P. S. Martin my estate to be divided equally among her four children.

"MAY MARTIN"

The appellants thereupon filed a contest to the probate of the will. The trial court after hearing the evidence admitted the will of Patrick S. Martin and included as a part of said will exhibit 2.

May Martin died on November 11, 1935. She left two wills dated July 19, 1935. Both were entirely written, dated and signed in her own handwriting, except that her first will, exhibit 1, contained a signature of a witness. She handed exhibit 1 to respondent Edith McMullan about noon of July 19, 1935, and stated that she was leaving her whole estate to respondent Mrs. George Davis. May Martin gave to respondent Edith McMullan exhibit 2 in the evening of the same day in an envelope marked, "To be opened after my death." Patrick S. Martin was present in the room at the time. At the time she delivered exhibit 2 she stated that she did not think exhibit 1 was legal because of the witness' name attached to it, and so she had made a second will. Edith McMullan took exhibit 2 home and put it with exhibit 1, and two days after May Martin's death and on or about November 13, 1935, she put exhibits 1 and 2 in a safety deposit box with Patrick S. Martin's will. Edith McMullan and Patrick S. Martin had a conversation about four or five days after May Martin had handed Edith McMullan exhibits 1 and 2 and about three months before May Martin died, at which time Edith McMullan told Patrick S. Martin of the contents of May Martin's wills and told him that Mrs. George Davis was to get May Martin's estate. Edith McMullan and Patrick S. Martin about one day after May Martin's death read May Martin's wills, exhibits 1 and 2, and Patrick S. Martin did not like the things May Martin had said about him and stated that the said wills should be torn up, but Edith McMullan stated to him that she could not do that, and Patrick S. Martin said nothing more. He then handed the wills back to Edith McMullan and she put them in the safe deposit box. Edith McMullan had a conversation with Patrick S. Martin about one month before his death, at which time Martin stated that he had broken into some of the capital but there was money in the bank which would take care of that. Patrick S. Martin gave Edith McMullan his will on November 10, 1935, in the living room of his home and she kept it in a safety deposit box until offered for probate. When May Martin

found that she was going to die in three months she had substantially all of her property transferred to Patrick S. Martin, which transfer was made on July 29, 1935.

■ Appellants rely upon *Estate of Young,* 123 Cal. 337 [55 Pac. 1011], a case in which the testatrix in an holographic will states "two deeds shall go to Katrina Muhr", and the testatrix executed two deeds to Katrina Muhr which were wrapped in a package with the will itself, and the Supreme Court on page 342 states, " . . . an existing writing may by reference be incorporated into and made a part of a will. But, before such an extrinsic document may be so incorporated, the description of it in the will itself must be so clear, explicit and unambiguous as to leave its identity free from doubt. The identification of the paper must be had from a description given in the will itself; otherwise the will is not wholly in writing as our law requires, but rests partly upon a writing and partly in parol."

However, in more recent cases the authorities seem clearly to establish that where there is a reference to any written document described as then existing in such terms that it is capable of being ascertained, parol evidence is admissible to ascertain it and the only question is whether the evidence is sufficient for the purpose.

In the *Estate of Plumel,* 151 Cal. 77 [90 Pac. 192, 121 Am. St. Rep. 100], the Supreme Court said: "It is true that there is some language in *Estate of Young,* 123 Cal. 337 [55 Pac. 1011], which, taken literally, tends to sustain the view that the identification of the paper to be incorporated must be possible from the face of the will or codicil alone. . . . But it is to be remembered that no reference, however explicit on its face, can identify a separate paper without the production of evidence to show that the particular paper offered does correspond to the descriptive particulars named in the will. . . . ; but the authorities seem clearly to establish that, where there is a reference to any written document, described as then existing in such terms that it is capable of being ascertained, parol evidence is admissible to ascertain it, and the only question, is, whether the evidence is sufficient for the purpose. Similarly, in *Brown* v. *Clark,* 77 N. Y. 369, the court of appeals of New York said: 'It is established by a long line of authorities that any testa-

mentary document in existence at the execution of a will may, by reference, be incorporated into and become a part of the will, provided the reference in the will is distinct and clearly identifies, or renders capable of identification, by the aid of extrinsic proof, the document to which reference is made.' (See, also, *Dickensen* v. *Stidolph,* 11 C. B. (N. S.) 341.)'' See, also, *Estate of Miller,* 128 Cal. App. 176 [17 Pac. (2d) 181]. The parol evidence, the admission of which was objected to by appellants, was admitted solely for the purpose of identifying and ascertaining the last will and testament of May Martin, which was referred to and incorporated in the will of Patrick S. Martin, and therefore the admission of the parol evidence in question was clearly proper.

■ Appellants next contend that there are two wills, and that the evidence, even if admissible, fails to support the finding that exhibit 1 was revoked by exhibit 2.

Section 72 of the Probate Code provides, ''A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; . . . '' It will be observed from examining exhibit 2 that its purpose is not to make supplemental provisions consistent with the former will in whole or in part, nor to dispose of other property, nor to amend and alter the prior dispositions, but on the contrary it undertakes to make complete disposition of all of decedent's property. It is the law of California that if the later writing purports to make disposition of all of decedent's property, the earlier instrument is deemed to be wholly revoked. (26 Cal. Jur. 812; *Estate of Siemers,* 202 Cal. 424 [261 Pac. 298]; *Estate of Bassett,* 196 Cal. 576 [238 Pac. 666, 668]; *Estate of Marx,* 174 Cal. 762, 764 [L. R. A. 1917F, 234, 164 Pac. 640]; *Estate of Scott,* 141 Cal. 485 [75 Pac. 44].)

The court was justified in finding that exhibit 2 revoked exhibit 1. There was no other will of May Martin produced.

■ Appellants' next contention is that the will of Patrick S. Martin does not dispose of any property and therefore is not a valid will. The will provides, ''& to carry out the terms of the will left by my wife May Martin''. Exhibit 2,

which was thereby incorporated into his will, provides, among other things, as follows: "All property in my own name & property in partnership with P. S. Martin my half of same at the death of said P. S. Martin to be sold & proceeds to be given to sister Mrs. Geo Peel Davis . . ." The will contains dispositive clauses and also appoints executors, but it is not our duty at this time to interpret the will and we are not attempting to do so. It is our duty only to determine of what the will consists.

The appellants next contend that, "A testator must have knowledge of the contents of his will at or prior to the time of making same, and likewise if he disposes of his property by an extrinsic instrument he must have knowledge of the contents of same at or prior to the time of making his will." May Martin turned over practically all her property to her husband about the time she made her will, and it would be hard to convince the court that she had not discussed with him the contents of her will. In our view there is substantial evidence that Patrick S. Martin knew the contents of his wife's will at the time he wrote his own. But we are not finding, and it is not necessary to find, that in order to make the incorporation of his wife's will valid it was necessary for him to know its contents.

The appellants next contend that the will of Patrick S. Martin is not a valid holographic will if he expressly or impliedly incorporated matter not in his own handwriting. This contention is not the law of California and is without merit. The principle of incorporation by reference applies to holographic wills, the extraneous writing being considered to be incorporated in such a will although not in decedent's handwriting. (*In re Soher,* 78 Cal. 477, 480 [21 Pac. 8]; *Estate of Skerrett,* 67 Cal. 585 [8 Pac. 181]; *Estate of Atkinson,* 110 Cal. App. 499 [294 Pac. 425]; *Estate of Sullivan,* 94 Cal. App. 674 [271 Pac. 753].)

Finally, the appellants contend that the executors are disqualified to act because they did not file the will of May Martin within the time prescribed by law for the filing of her will. In arguing this contention appellants seem to proceed on the impression that this proceeding is for the probate of the will of May Martin. It is not; it is one for the probate of the will of Patrick S. Martin. In this case the execu-

tors complied with the statutory requirements as to filing for probate the will of Patrick S. Martin. If they had not it should be further noted that section 324 of the Probate Code is not mandatory but is discretionary.

Judgment affirmed.

Wood, J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 15, 1939.