[Civ. No. 20317. Second Dist., Div. Three. Dec. 17, 1954.]

Estate of CECIL J. EGGLESTON, Deceased. FELICITAS
CECHOVIN et al., Respondents, v. CHESTER RICH-
ARD EGGLESTON, Appellant.

Maury, Larsen & Hunt, Steiner A. Larsen, Matsen, Cory & Matsen, Joseph Matsen and Clyde R. Cory, Jr., for Appellant.

Watson, Hart & Mieras, Montgomery G. Rice and Ernest R. Utley for Respondents.

VALLÉE, J.—Appeal from a decree determining who are entitled to distribution. of an estate under a will. (Prob. Code, §§ 1080-1082.)

On May 3, 1951, Cecil J. Eggleston and his wife Kay made a homicide and suicide pact by which they agreed that he would first take her life and immediately thereafter take his own. The same day Cecil executed two instruments which were admitted to probate as his holographic will. The first instrument reads:

May 3—1951

To Whom it May Concern—

Our love has brought us to these conclusions. Kay will leave me by my own hand and I will join her a few minutes latter.

Our last will and testiment

We leave our insurance and worldly goods in the Hands of Allen Frie as administrator with instructions in a separate letter this date in my handwriting. C Jay Eggleston

My interest in any Phillopine Island business or the mercury holdings in Mexico are to be the sole possions of Howard J Kane

Longbeach 908515
C Jay Eggleston

Witness Kay Eggleston

Notify Allen Frei at once
 c/o Federal Bureau of Investigation
 Beaumont Texas

The second instrument reads:

Thursday—
~~Wednesday~~ May 3—51

Dear Al—

Well old goat it seems we are about to impose on you once more. You will favor us by acting as receiver for our estate. Inclosed find list of debts that should be paid.

Here are two life Ins Policys with Massachusetts Mutual one for 10,000$^{00}$ which should clean up the bills and leave you something for the Trouble. The other for 50,000$^{00}$ we want you to earnestly work on. Kays sister

Felicitas or Phyllis Checkovin
last address known to her was
5305 Wetzel Ave
Cleveland Ohio

should receive $40,000$^{00}$ in the form of a dissapating annuity to

[Page 2] # 2

be paid in monthly installments. In the event of her death previous to this date the same amount divided among ~~her~~ the children of her body equally, and in the same way—annuities to be paid by the month.

The balance of $10,000$^{00}$ you should devide equally between yourself and Lt G. L. Pitsenberger to be used any way you please, as token of our friendship.

We have also 2700$^{00}$ in E Bonds that belong to Pits please see that he gets them.

Thanks & Swell Sailing
Jay & Kay

see page # 3

[Page 3] # 3

In the event you can not trace Kays sister in one year. then try to trace my son Chester Richard Eggleston Born to Cecil Jessie Eggleston and Beulah Penny Eggleston in Sioux City Iowa

St Joseph Hospital March
Dr Gillespie in 1924 or 25
and buy him the same treatment.

Cremate us with a very inexpensive ~~funeral~~ & scatter us in Apple Valley.

Kays sickness has become unbearable and my back has kept me ready for a long time.

Make it fun not sorrow. Jay—

The compact was carried out and Cecil died that day. The "Al" referred to is Allen F. Frei, who was appointed. executor of the will. The $50,000 policy was not payable in the form of annuities.

Felicitas Checkovin was not located until April 1953, about 22 months after the will was admitted to probate. The son was located in January 1953.

The court found: the bequest to Felicitas had not lapsed; the testator intended to, and did name Felicitas as the specific beneficiary of a $40,000 "dissipating annuity"; by the use of the language, "In the event you can not trace Kays sister in one year then try to trace my son . . . ," the testator did not, nor did he intend to, establish a condition terminating the bequest to Felicitas in the event she was not traced within one year; said language is not equally as clear as the bequest; the testator intended by that language only to fix a time when an effort to trace the son should commence; there is no language in the will cutting off the clear bequest to Felicitas; the general testamentary plan of the testator contemplated that the bequest should be paid to Felicitas in the event she could be traced before distribution of the estate, and in the event of her death, to the children of her body, if any, equally. Among the conclusions of law was one that the son is not a pretermitted heir.

The court decreed that the estate was bequeathed and devised four-fifths to Felicitas Checkovin, and one-fifth equally between Allen F. Frei and G. L. Pitsenberger. Chester Richard Eggleston, son of the deceased, appeals.

Appellant claims the trial court's interpretation of the will is contrary to the intention of the testator and unreasonable. He says the testator obviously intended to make a bequest of $10,000 to be divided between Frei and Pitsenberger and a bequest of an annuity to his sister-in-law "provided, however, that she be located within one year, and if she was not located within one year the bequest of said annuity go to his son." He argues that the bequest to the sister-in-law was a conditional bequest; that it was a valid condition; and since it was not fulfilled, the sister-in-law not having been located within one year, it failed. We are in accord with the trial court's construction of the will.

In the interpretation of a will, ascertainment of the intention of the testator is the cardinal rule of construction, to which all other rules must yield. (Prob. Code, § 101; *Estate of Salmonski*, 38 Cal.2d 199, 209 [238 P.2d 966] ; *Estate*

*of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893]; *Estate of Foley,* 126 Cal.App.2d 810, 812 [273 P.2d 26].) A clear and distinct devise or bequest cannot be affected by any other words not equally clear and distinct, or by inference or argu- ments from other parts of the instrument. (Prob. Code, § 104; *Estate of Salmonski, supra,* 38 Cal.2d 199, 209; *Estate of Moorehouse,* 64 Cal.App.2d 210, 215 [148 P.2d 385].) The instrument is to be examined with a view of discovering the decedent's testamentary scheme or general intention; and the meaning of particular words, phrases, and provisions shall be subordinated to such scheme, plan, or dominant purpose. (*Estate of Raymond,* 96 Cal.App.2d 808, 814 [216 P.2d 515].) Another rule to be applied is: Did the testator intend by the language used, considering the will "from its four corners," to make locating Felicitas within one year a condition precedent to her receiving the bequest? (*Cf. Estate of Taylor,* 119 Cal.App.2d 574 [259 P.2d 1014].)

 A condition will not be implied from indefinite language. (*Idem.,* 581; *Buttram* v. *Finley,* 37 Cal.App.2d 459, 464 [99 P.2d 1093].) And since the will was drawn by the testator, obviously without legal aid, "he may not be supposed to have used the same niceties of descriptive language as would be employed by an expert draftsman." (*Estate of Soulie,* 72 Cal.App.2d 332, 334 [164 P.2d 565].)

There is no doubt but that Cecil and Kay intended that the will should express their mutual intentions. The first instrument says, "Our love has brought us to these conclusions," and "We leave our insurance and worldly goods in the Hands of Allen Frei. . . ." The second instrument says to Frei, ". . . we are about to impose on you once more. You will favor us by acting as receiver for our estate," and "The other for 50,000⁰⁰ we want you to earnestly work on." The will is to be construed with these expressions in mind. For reasons which do not appear, the instruments were not admitted to probate as Kay's will.

 The will clearly makes an absolute bequest to Kay's sister, Felicitas of $40,000 from a $50,000 insurance policy in the form of a dissipating annuity to be paid in monthly installments. This bequest is followed by the provision that in the event of the death of Felicitas prior to the date of the will the same amount is to be divided among the children of her body equally, and in the same way. Following these provisions there is a bequest of the balance of the $50,000, insurance, a statement about some "E Bonds," and the signa-

tures "Jay & Kay." Apparently as an afterthought, the testator wrote on a separate page the provision about tracing Felicitas.

There is nothing in the latter provision reflecting a clear change of intent with respect to the bequest of Felicitas. There is no expression which would suggest that the testator intended that the absolute bequest to her should be subject to the condition that she be located within one year. The language, "In the event you can not trace Kays sister in one year then try to trace my son," is merely a direction to the executor. It says to him—trace Felicitas; if you have not traced her within one year, then try to trace the son. It merely directs that a search be commenced for the son if Felicitas is not located within a year. It does not say, "stop looking for Felicitas." The executor is only to "buy him [the son] the same treatment" if Felicitas is not traced. It does not, as appellant says, state that Felicitas was to be traced in one year nor does it bequeath the $40,000 annuity to Felicitas "provided, however, that she be located within one year, and if she was not located within one year the bequest of said annuity go to his son."

Appellant's contention ignores the fact that the will provides that should Felicitas have predeceased the testator the bequest was to go to her children. The will is silent as to the length of time the executor may have within which to locate the children of Felicitas if she was not living. If Felicitas was not living, the children, if they were in existence, not the testator's son, would have been entitled to their mother's share. The dominant intent is clearly evidenced that Felicitas should receive the bequest if she were alive at the time the will was made, and if she were not, that her children should receive it.

As the learned trial judge stated, the provision for the wife's sister was the principal and primary consideration of the decedent. The bequest to Felicitas is clear and distinct. It cannot be affected by the tracing provision which is not equally clear and distinct. The testator did not evidence an intention that if she was not located within a year she lost the bequest. A reasonable construction of the will in its entirety is that it was his intention that if she appeared prior to distribution she would receive the bequest, and it was only in the event she was not traced during administration that she would not take.

Appellant contends that in the event it is held that Felicitas

takes under the will he is a pretermitted heir and entitled to distribution of the entire estate. Probate Code, section 90, provides: "When a testator omits to provide in his will for any of his children, . . . and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate." It clearly appears from the will that the omission was intentional. ■ Under the statute an heir is intentionally omitted from a will if it appears from the will that the testator had the omitted person in mind, and having him in his mind, has omitted him from the provisions of the will. (*Estate of Trickett*, 197 Cal. 20, 23 [239 P. 406] ; *Estate of Talmage*, 114 Cal.App.2d 18, 21 [249 P.2d 345] ; *Estate of Cochems*, 112 Cal.App.2d 634, 637 [247 P.2d 131].) As we have seen, the will bequeathed part of the insurance to Felicitas and in effect provides that appellant shall take that bequest if Felicitas is not located prior to distribution of the estate. Thus the testator had appellant in mind, and having him in mind intentionally omitted to provide for him should Felicitas be located. Further, in his reply brief, appellant appears to have abandoned this contention. He says, "Respondent's Point IV is that no question of pretermission arises in this case. We are inclined to agree."

We conclude that the probate court correctly construed the will.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 10, 1955, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1955. Schauer, J., was of the opinion that the petition should be granted.