240 Cal.App.2d 784 (1966)
Estate of MELVIN LAMAR FOXWORTH, Deceased. LORRAINE CEFALU, as Executrix, etc., Petitioner and Respondent,
v.
SANDRA LEE YATES et al., Claimants and Appellants.
Civ. No. 29279. 
California Court of Appeals. Second Dist., Div. One. 
Mar. 15, 1966.
 Gerald S. Johnson and Marshall K. Gordon for Claimants and Appellants.
 Danielson & St. Clair and Walter G. Danielson for Petitioner and Respondent.
 WOOD, P. J.
 Ruby Foxworth, the mother of Melvin Lamar Foxworth, the deceased, instituted heirship proceedings (Prob. Code, 1080) in which Ida Foxworth, the divorced wife of the deceased, filed a statement claiming interests in the deceased's estate on behalf of herself and the children of the deceased--asserting that the children are pretermitted heirs and that Ida has a community property interest. During the pendency of this appeal, Ruby Foxworth died, and Lorraine Cefalu, the executrix of her will has been substituted as the party respondent in place of Ruby Foxworth. The court found that a joint will made by the deceased and his wife (prior to the divorce) had been incorporated by reference in a subsequent holographic will made by the deceased, and that the deceased had intentionally omitted to provide for the children in the holographic will, and that Ida has no interest in the estate. Claimants appeal from the judgment distributing the *786 estate to the petitioner (who is the beneficiary under the holographic will).
 Appellants contend that the court erred in finding that the joint will had been incorporated by reference in the holographic will, and in finding that the deceased had intentionally omitted to provide for the children in the holographic will.
 On October 14, 1960, Melvin L. Foxworth (the deceased) and his wife, Ida, executed a joint and mutual will which was prepared by an attorney, James A. Black. A provision of the will states that Melvin and Ida are husband and wife, and that they have four children, Sandra Lee Yates (age 21), Marlin Charles Foxworth (age 17 1/2), Michael John Foxworth (age 11), and Robert James Foxworth (age 10). The will provides in substance that upon the death of Melvin or Ida, all of the decedent's property shall pass to the surviving spouse, and, upon the death of such survivor, to the four children in equal shares. After the will had been executed, Ida retained the original thereof, and attorney Black retained a copy.
 On February 7, 1962, Ida filed an action for divorce. On February 27, 1962, Melvin executed a holographic will which provides as follows:
 "From this day on dated Feb 27th 1962 My Wife Ida Foxworth is sueing me for a divorce --so I wish to change the Will that is being held (copy) by Mr Black attorney. All that I have according to law--stocks, bonds, cash, realestate etc I wish to leave to my mother--Mrs Ruby Foxworth--she can dispose of same as she sees fit--My wish is that she will leave it to the only son that has shown me any kindness--My son Michael John Foxworth (a good boy)"
 Signed this day 2-27-62
 Melvin Lamar Foxworth""
 On February 13, 1963, an interlocutory judgment of divorce was granted in favor of Ida. As modified (on February 25, 1963), the judgment provides, among other things, that the custody of the minor children is awarded to Ida, that certain stock held as community property be divided equally, and that Melvin, from the sale of his portion of said stock, purchase a paid-up annuity for the benefit of the minor children. Pursuant to the judgment, Melvin purchased a paid-up annuity for the benefit of the minor children, Michael and Robert. (Sandra was then 24 years of age, and Marlin was 20 years *787 3 1/2 months of age. The parties apparently did not consider Marlin to be a minor child.)
 On February 27, 1963, Melvin died. On March 1, 1963, Ida filed a petition for probate of the joint will, and on March 6, 1963, Ruby Foxworth (deceased's mother) filed a petition for probate of the holographic will. The petitions were consolidated (by a nunc pro tunc order), and, after a hearing on both petitions (on June 21, 1963), the court admitted the holographic will to probate and denied probate of the joint will.
 Approximately one year later (May 22, 1964), Ruby filed a petition for a decree determining interests in the estate. In substance, the petition alleges that the holographic will has been admitted to probate; more than four months have elapsed since notice to creditors was given; said will devises all of decedent's estate to petitioner (Ruby) and intentionally omits provision for Ida and the children; and the children have received a proportion of decedent's estate by way of advances.
 On July 1, 1964, Ida and the four children filed a statement of claims of interest in the estate, alleging in substance that the children were unintentionally omitted from the holographic will and have not received advances; and that Ida claims an interest in the estate by reason of certain assets thereof being community property.
 At a hearing (on August 21, 1964) on the petition and statement, there was evidence, among other things, that Ida had retained the original of the joint will, and Attorney Black had retained the copy thereof, from the date (October 14, 1960) of execution thereof until the date of the hearing. Claimants objected to petitioner's offer of the copy of the joint will in evidence. The copy was marked for identification, and the judge said that a ruling on the objection would be reserved "until I hear arguments from counsel." After all of the evidence had been presented, the objection was argued by counsel, and the entire matter was taken under submission without a ruling having been made on the objection.
 The judgment provides in substance as follows: After hearing and considering the evidence and arguments of counsel, the court finds that Melvin Lamar Foxworth died testate, leaving a holographic will which has been admitted to probate; the holographic will incorporated "in it," by reference, the will prepared by Attorney Black, and filed with the court for probate by Ida M. Foxworth, and made a part of the file and records in this proceeding; by the terms of said holographic *788 will the whole of decedent's estate is devised and bequeathed to Ruby Foxworth; decedent was divorced by Ida M. Foxworth, and she has no interest in the estate; the decedent left surviving him as his only heirs at law his four children, Sandra Lee Yates, Marlin Charles Foxworth, Michael John Foxworth, and Robert James Foxworth; decedent intentionally omitted to make any provision for any of said children in his holographic will, and he intended to, and in fact did, devise and bequeath his entire estate to his mother, Ruby Foxworth.
 [1a] Appellants contend that the court erred in finding that the joint will had been incorporated by reference in the holographic will, and in finding that the deceased had intentionally omitted to provide for the children in the holographic will.
 In Estate of Smith, 31 Cal.2d 563 [191 P.2d 413], where the deceased had written a holographic revocatory clause across the face of a copy of an attested will (the original of which had been left with the deceased's attorney), the court held that the deceased had incorporated the attested will in the holographic clause, and said (p. 567); "It has long been settled in this state that either a holographic or an attested testamentary instrument may refer to and incorporate another testamentary instrument executed with different statutory formalities or an informal or unattested document, so long as the reference is unmistakable or with the aid of extrinsic proof can be made so." (See 4 Witkin, Summary of Cal. Law (1960) Wills and Probate, 102, p. 3095.) "The papers incorporated by reference are used to construe and apply the will, and do not become part of the will in the same sense as those integrated. Hence the holographic will may be regarded as entirely in the testator's handwriting, as required by the statute." (4 Witkin, supra, p. 3095; see Estate of Caruch, 139 Cal.App.2d 178, 189 [293 P.2d 514]; Estate of Dobrzensky, 105 Cal.App.2d 134, 141 [232 P.2d 886]; Estate of Plumel, 151 Cal. 77, 79 [90 P. 192, 121 Am.St.Rep. 100]; Estate of Martin, 31 Cal.App.2d 501, 507 [88 P.2d 234]; 2 Bowe-Parker: Page on Wills, 19.17, p. 88.)
 [2] It has also been said that the requisites of incorporation by reference are (1) the extrinsic paper must be in existence at the time the will makes reference to it; (2) the will must identify the paper by a sufficiently certain description, and extrinsic evidence is admissible as an aid to such identification; and (3) it must appear that the testator intended to *789 incorporate the paper for the purpose of carrying out his testamentary desires. (4 Witkin, Summary of Cal. Law (1960) supra, pp. 3096-3097; see Simon v. Grayson, 15 Cal.2d 531, 533 [102 P.2d 1081]; Estate of Smith, 196 Cal.App.2d 544, 548-549 [16 Cal.Rptr. 681].)
 [1b] In the present case, Melvin and Ida Foxworth, while married, made a joint will which specifically named their four children, and provided in effect that upon the death of Melvin or Ida, all of the deceased's estate would pass to the surviving spouse, and, upon the death of such survivor, to the four children in equal shares. After Ida had commenced a divorce action, Melvin made a holographic will. In the will he specifically referred to a copy of the joint will which was held by Mr. Black, the attorney who had drawn the joint will, and stated in substance that, because Ida was suing him for divorce, he wished to change the joint will, and leave his entire estate to his mother with the wish that she leave it to Michael, the only son who had shown him any kindness. There was also evidence that Attorney Black had possession of the copy of the joint will (and Ida had the original) at the time the deceased executed the will.
 Thus, the joint will was in existence at the time when the holographic will was executed, and the holographic will identifies and describes the joint will in sufficiently certain terms. It also appears that the testator (Melvin), by expressing his desire to change the testamentary scheme set forth in the joint will, intended to incorporate the joint will by reference. (See Estate of Dobrzensky, supra, 105 Cal.App.2d 134 [232 P.2d 886], where the testator, in her holographic will, stated her intent to "change" provisions of the previous attested will, and the court held the attested will to be incorporated by reference in the holographic will.) In the Dobrzensky case, it was said (p. 141): " 'There is good reason, moreover, for permitting a testator in a holographic will to incorporate an extrinsic document as a part of the will by a sufficient reference thereto in the will, notwithstanding the extrinsic document does not itself meet the statutory requirement of a holographic will that it be entirely in the handwriting of the testator.' " An example of such a reason is indicated in the present case, where the testator, in order to accomplish his expressed desire to change the joint will, would have been required, if acting without aid of the doctrine of incorporation by reference, to copy the lengthy provisions of the joint will *790 into the holographic will, whereas, with the aid of the doctrine of incorporation by reference, he might accomplish the desired intent by identifying the joint will and referring to it in a few words, as the will he then had in mind and was intending to change. (See 2 Bowe-Parker: Page on Wills, 19.17, pp. 87-88.) It appears that at the time he executed the holographic will he did not have a copy thereof--the original was in Ida's possession, and the copy was in Attorney Black's possession. Under the circumstances, the three requisites of incorporation by reference appear to have been met, and the court did not err in finding that the joint will was incorporated by reference in the holographic will.
 [3a] Appellants further contend that the court erred in finding that the deceased had intentionally omitted to provide for the four children in the holographic will. They argue that, under the provisions of section 90 of the Probate Code, the children are entitled to succeed to intestate shares of the deceased's estate "unless it appears from the will that such omission was intentional."
 In the present case, it appears from the holographic will that the testator, by reason of the divorce, intended to change the testamentary scheme of the joint will, and, to effect that intent, he incorporated the joint will by reference in the holographic will. As previously stated, the joint will specifically names the four children and provides that they receive equal shares of the estate of the surviving spouse. The holographic will changes that scheme, and provides that the deceased's estate go to Ruby with a wish that she leave it to Michael, the only son who had shown kindness to the deceased. [4] Although the gift to Michael is precatory in nature, it has been said that an ineffective attempt to give a legacy or devise can be a sufficient mention of the testator's intention so as to constitute an intentional omission to provide for his children. (See 2 Bowe- Parker: Page on Wills, supra, p. 540; Estate of Callaghan, 119 Cal. 571 [51 P. 860, 39 A.L.R. 689]; Estate of Eggleston, 129 Cal.App.2d 601 [277 P.2d 469].) [3b] The clear import of the testator's wish that his mother leave the estate to Michael, the only son who had shown him kindness, is that he had his other sons in mind and intentionally omitted to provide for them. Moreover, with regard to the sons and the daughter, the testator (in his holographic will) states his intent to change the joint will in which they are named as beneficiaries, and incorporates that will by reference in the *791 holographic will. Thus, it appears from the holographic will that the deceased intentionally omitted to provide for all of the children. In the Callaghan case, supra, it was said (p. 574): "... as such a provision [Prob. Code, 90] is not intended as a limitation of the power of a person to dispose of his property by will, it has been uniformly held that the provision applies only to a case where a child or descendant is unknown or forgotten, or for some reason unintentionally overlooked." In the circumstances of the present case, it does not appear that the children were unintentionally overlooked.
 Appellants assert, however, that in Estate of Torregano, 54 Cal.2d 234 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 59], and Estate of Falcone, 211 Cal.App.2d 40 [27 Cal.Rptr. 38], it was held that the intention to omit children must appear from the will and cannot be shown by extrinsic evidence. The facts in those cases are distinguishable from the present case wherein the court found that the joint will was incorporated by reference in the holographic will. In the Falcone case, such a distinction was expressly noted (p. 46) as follows: "Appellant refers to a number of cases relating to the incorporation of nontestamentary documents by reference as a result of which they are made a part of a will. That this can validly be done is true even with respect to the adoption in a holographic will of a document which is not written, dated and signed in the handwriting of the testator, such as was construed by the court in Estate of Martin, 31 Cal.App.2d 501 [88 P.2d 234]. There, the language in the holographic will directed that real and personal property be left so as to carry out the terms of the will left by decedent's wife. This was held to be a valid incorporation by reference. In the case before us there is nothing in the holographic will indicating any intention on the part of the testatrix that the letter be considered a part of the will." (Italics added.)
 In Estate of Ballesio, 201 Cal. 357 [256 P. 1101], the testator wrote a holographic instrument on one side of a paper whereby she left her real and personal property to a beneficiary, and did not mention her son. On the other side of the paper she directed the beneficiary to deposit $1,000 in the bank for her son. The court construed both sides of the paper together and held that the son was intentionally omitted.
 In Estate of Sawyer, 193 Cal.App.2d 471 [14 Cal.Rptr. 450] an intentional omission to provide for the testator's child was shown by a note appended to a printed form will. *792
 In Estate of Cuneo, 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1], decided after the Torregano case, the testator had made four wills (dated 1943, 1951, 1954, and 1956). The 1954 will had been prepared by an attorney, and the other wills were holographic. The 1954 will mentioned all of the testator's children. The 1956 holographic will, which makes a reference to the 1954 will in the possession of the executor (Attorney de Paoli) does not mention all of the children. In 1957, de Paoli returned the 1954 will to the testator at her request, and she said that she did not want it and intended to burn it. The original of the 1954 will was not found, but a copy thereof was introduced in evidence. With the exception of the 1943 will, all of the wills were filed for probate. On appeal, where one of the contentions was that the 1956 will does not, by itself, mention the children, it was said (p. 205): "However, the 1956 instrument, standing alone, fails to mention four of decedent's six issue. Section 90 of the Probate Code imposes intestacy upon a testatrix as to any child who is not provided for by the testator 'in his will' unless 'it appears from the will' that the omission was intentional. Extrinsic evidence is not admissible to establish the intent to omit. [Citation.] On the other hand, if the 1954 will as modified is revived and admitted to probate together with the 1956 instrument as republished, the testatrix's intentions with respect to all her issue expressly appear within the testamentary documents, and such children do not achieve the status of pretermitted heirs."
 In the Cuneo case, it was also said (p. 201): " '[T]he rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court.' "
 In the present case, the court found that the joint will had been incorporated by reference in the holographic will. As previously stated (4 Witkin, Summary of Cal. Law (1960) supra, p. 3095), papers incorporated by reference are used to construe and apply the will (the resolution of which issues is the primary purpose of heirship proceedings). After finding that the joint will was incorporated in the holographic will, the court found that the children had been intentionally omitted. In the Torregano case, it was held that the testator's child *793 could introduce extrinsic evidence to show a lack of intent by the testator to omit the child from his will. There were no facts relating to whether an intentional omission could be shown by construing extrinsic papers which the testator had incorporated by reference in his will, and the court said (p. 250): "In determining the question of intentional omission, more than in any other situation involving the interpretation of wills, the court must be guided by the individual facts of each case ..." (See Estate of McClure, 214 Cal.App.2d 590, 593 [29 Cal.Rptr. 569].) Under the facts in the present case, the court did not err in finding that the children had been omitted intentionally in the holographic will.
 The judgment is affirmed.
 Fourt, J., and Lillie, J., concurred.